PEOPLE v YATOOMA

Docket No. 77-2415. Submitted June 21, 1978, at Detroit.—Decided
    August 21, 1978. Leave to appeal applied for.

    Defendant, Harry Yatooma, was convicted of one count of con-
        spiracy to burn real property and one count of burning real
        property in the Recorder's Court of Detroit, Thomas L. Poindex-
        ter, J. The primary evidence against him was the testimony of
        two co-conspirators who testified under a grant of immunity.
        Defense counsel, in cross-examination, questioned one of the
        two co-conspirators about the terms of the immunity grant and
        elicited the answer that as a condition of the immunity grant
        the witness had to pass a lie-detector test. Defense counsel
        moved for a mistrial and, when that was denied, refused the
        offer of a cautionary instruction by the Court. Defendant ap-
        peals. *Held:*

        In reviewing a criminal trial in which evidence of a poly-
        graph examination was introduced for the prejudicial effect of
        the evidence the following factors should be considered: (1)
        whether the defendant objected and/or sought a cautionary
        instruction; (2) whether the reference was inadvertent; (3)
        whether there were repeated references; (4) whether the refer-
        ence was an attempt to bolster the witness's credibility; and (5)
        whether the results of the test were admitted rather than
        merely the fact that a test had been conducted; under the facts
        of this case the reference to the lie-detector test was reversible
        error.

        Reversed and remanded.

CRIMINAL LAW—APPEAL AND ERROR—EVIDENCE—POLYGRAPH EXAMI-
    NATION.

    Evidence of a polygraph examination is inadmissible in a crimi-
        nal trial; in reviewing the prejudicial effect of the admission of
        evidence of a polygraph examination of one of the witnesses the

REFERENCES FOR POINTS IN HEADNOTE

29 Am Jur 2d, Evidence § 296.

75 Am Jur 2d, Trial §§ 110, 208, 266.

Propriety and prejudicial effect of comment or evidence as to
    accused's willingness to take lie detector test. 95 ALR2d 819.

following considerations should be weighed: (1) whether the defendant objected and/or sought a cautionary instruction; (2) whether the reference was inadvertent; (3) whether there were repeated references; (4) whether the reference was an attempt to bolster the witness's credibility; and (5) whether the results of the test were admitted rather than merely the fact that a test had been conducted.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *H. Gail McKnight,* Assistant Prosecuting Attorney, for the people.

*Daniel R. Siefer* and *Colista, Green, Green & Adams* (by *Richard C. Kaufman),* for defendant.

Before: D. C. Riley, P. J., and M. F. Cavanagh and B. M. Hensick,* JJ.

Per Curiam. Defendant Harry Yatooma, convicted at a jury trial of one count of conspiracy to burn real property, MCL 750.73, 750.157a; MSA 28.268, 28.354(1), and one count of burning real property, MCL 750.73; MSA 28.268, was sentenced to concurrent prison terms of three to ten years.

The primary evidence of defendant's involvement in a fire at the Al Hadaf Printing Shop in Detroit was the testimony of Michael Robinson and Hazim Saeegh. Robinson and Saeegh both testified under grants of immunity from the prosecution. Saeegh testified that he was approached by Johnny Yaldoo, who asked Saeegh to arrange with Robinson to burn the print shop as a favor to defendant. Saeegh later discussed the fire directly with defendant.

Robinson testified that Yaldoo and Saeegh instructed him to burn the print shop and gave him

---

* Circuit judge, sitting on the Court of Appeals by assignment.

a key which he eventually used to enter the shop and set the fire. Some time after the fire defendant admitted to Robinson that he had arranged for the fire.

On cross-examination Robinson stated that part of the immunity deal he had made with the prosecutors was that he would not be charged relevant to his involvement in approximately 30 other fires. The questioning then turned to other aspects of the immunity agreement:

"Q (By Mr. Varga, continuing) *[Defense Attorney]*: Are you being prosecuted for any of those fires?

"A No, I'm not.

"Q Is that part of your deal with the Prosecutor's office?

"A That is one of the major clauses of immunity.

"Q What are some of the other clauses?

"A That I pass a lie-detector test."

Following this response the jury was removed and defendant moved for a mistrial. The court denied the motion, but offered to give a cautionary instruction for the jury to disregard the mention of a polygraph test. Defense counsel refused the instruction, arguing that no instruction could remove the prejudice of the remark from the jurors' minds.

There is no dispute that evidence of a polygraph examination is inadmissible under Michigan law. *People v Barbara,* 400 Mich 352; 255 NW2d 171 (1977), *People v Davis,* 343 Mich 348; 72 NW2d 269 (1955). Clearly the prosecution could not have asked Robinson about the test, or introduced any evidence as to the test results.

In the present case, however, the statement concerning the polygraph was made in a seemingly unanticipated response to a question by de-

fense counsel. Our research reveals several cases in which polygraph testimony was elicited on cross-examination of a witness.

In *People v Leroy Goodwin,* 40 Mich App 709; 199 NW2d 552 (1972), the reference to a polygraph test occurred during the cross-examination of the prosecution's chief witness, a police informant who was testifying after a pending charge against him had been dropped. The witness, responding to counter defendant's suggestion that the charge had been dropped in exchange for the testimony, stated that the charge was dismissed after he had successfully passed a polygraph test. Testimony regarding this test was also brought forth during the direct and cross-examinations of a police witness.

The *Goodwin* Court, noting that defendant neither objected to the testimony nor sought a cautionary instruction, nevertheless found reversible error. In reaching this decision, the Court took into account several factors:

"In considering the possible prejudicial effect of the inadmissible evidence in the case at bar, it is significant to note that reference was made to polygraph tests on two separate occasions by different state witnesses. In both instances said reference was neither brief nor inadvertent, but, on the contrary, was a clear attempt to rehabilitate and restore informant Booker's credibility. In both situations the *results* of the test were testified to in the jury's presence. The problem was further aggravated by the police officer testifying as to the reliability of such tests. Furthermore, it is pointed out that informant Booker's testimony was the crucial aspect of the prosecution's case and impeaching his credibility became defendant's major tactic of defense. In light of all the above, we reach the conclusion that the introduction of the inadmissible evidence may well have improperly influenced the jury's verdict in this case so as to constitute a miscarriage of justice. The

accused thus becomes entitled to a new trial." (Footnote omitted.) 40 Mich App at 715–716.

A similar approach, involving analysis of a number of factors, was taken by this Court in *People v Whitfield,* 58 Mich App 585; 228 NW2d 475 (1975). The *Whitfield* Court considered (1) whether defendant objected and/or sought a cautionary instruction; (2) whether the reference was inadvertent; (3) whether there were repeated references; (4) whether the reference was an attempt to bolster the witness's credibility; and (5) whether the results of the test were admitted rather than merely the fact that a test had been conducted. 58 Mich App at 588–591. The Court concluded, based on the facts of the particular case, that no reversible error had been committed. See also *People v Ranes,* 63 Mich App 498; 234 NW2d 673 (1975), *People v Lawson,* 48 Mich App 662; 211 NW2d 96 (1973), *People v Paffhousen,* 20 Mich App 346; 174 NW2d 69 (1969).

Applying this factor analysis to the case at bar, we conclude that defendant is entitled to a new trial. Admittedly several factors do lean toward a finding of harmless error. The remark was an isolated and apparently inadvertent occurrence. Defendant refused to allow a cautionary instruction. However, these factors are outweighed by the remaining considerations.

Defendant did seek a mistrial. The decision to forego an instruction, after the mistrial motion was denied, was a legitimate tactical decision, as defense counsel did not want the jury reminded that the remark had been made. Further, the results of the test were made known to the jury rather than just the fact of the test, since the witness stated that he had to *"pass"* the test before the immunity was approved.

The most telling factor weighing for reversal is the effect of the remark on the critical issue of the trial, namely the relative credibilities of Robinson and Saeegh versus defendant. The jury, required to choose between two directly conflicting stories regarding defendant's involvement in the fire, cannot be presumed to have been unaffected by evidence that one of the witnesses had successfully passed a lie-detector test prior to his testimony. In addition, the jury may have made an inference, although no testimony was presented on the subject, that Saeegh also had to have passed a polygraph test prior to his grant of immunity. A primary rationale behind exclusion of polygraph testimony is that such evidence is not as yet sufficiently reliable, by way of scientific recognition, to risk the potentiality that the trier of fact will suspend its powers of deliberation and rely solely on the results of the test. See *People v Barbara, supra* at 404, fn 36. We conclude that a sufficient possibility existed in defendant's trial that the jury may have resolved the credibility issue by reference to the polygraph testimony. We therefore must reverse the conviction. *People v Leroy Goodwin, supra.*

In light of this disposition, we need not discuss the other issues raised by defendant. We will note, however, that rebuttal testimony is admissible only to refute relevant and material evidence, and cannot be introduced in regard to collateral matters. *People v Bennett,* 393 Mich 445; 224 NW2d 840 (1975).

Reversed and remanded.