Per Curiam.
 

 After a jury trial, defendant was convicted of first-degree murder under MCL 750.316; MSA 28.548 and sentenced to life without parole. He appeals as of right, urging us to reverse the jury’s verdict for four reasons: (1) the trial court erred in denying his motion for a mistrial after a key prosecution witness, defendant’s accomplice after the fact, revealed to the jury that he was required to take a lie detector test, (2) the trial court made evidentiary errors, the cumulative effect of which denied defendant a fair trial and his right to confrontation, (3) the trial court should not have permitted the prosecutor to present rebuttal evidence that should have been included in the case in chief, and (4) that the evidence was insufficient to support a conviction of first-degree murder. For the reasons discussed below, we find no merit in any of defendant’s claims, and we affirm his conviction.
 

 i
 

 Defendant was charged with the particularly heinous murder of a young woman. The victim’s family reported her missing sometime in December 1993. Approximately 2Vk years later, Billy Brown, fearing that police were close to making an arrest in the case, confessed that he was present when defendant killed the victim and that he helped to conceal the body. He
 
 *511
 
 denied, however, that he took part in the killing. In exchange for his testimony against defendant, he was charged as an accessory after the fact. Billy, the only eyewitness to the crime, served as the prosecution’s main witness. Defendant testified in his own defense. The two accounts of events leading up to the killing were similar in many respects. However, defendant testified that he left Billy and the victim alone, and Billy killed her when she refused to have sex with him. Billy testified that defendant killed the victim because she was defendant’s old girlfriend, she obsessed over defendant and interfered with his other relationships, and she had damaged his truck on more than one occasion. Billy further testified that defendant killed her while he watched. Together they disposed of the body in a process that involved mutilation, incineration, cannibalism, and burial.
 

 While testifying, Billy mentioned that, at one point, police were prepared to make him take a lie detector test.
 

 Q. [Prosecutor]:
 
 You were under the impression that you could be charged with murder after the interview with Detective Brooks?
 

 A. [Bitty]:
 
 Yes, when I left on the 10th, I still had to take a polygraph. If I didn’t pass that, I would have been charged with second degree murder.
 

 The jurors were dismissed, and defendant moved for a mistrial. The trial court denied the motion and issued an exhaustive curative instruction. Defendant argues that the trial court erred in denying his request for a mistrial. We disagree.
 

 
 *512
 
 A
 

 Defendant and the prosecution disagree over which standard of review governs this issue. Defendant argues that we should review de novo the trial court’s application of the factors listed in
 
 People v Yatooma,
 
 85 Mich App 236; 271 NW2d 184 (1978), and review for abuse of discretion any factual findings relied on by the trial court. The prosecution, on the other hand, argues that we review a trial court’s decision to grant or deny a mistrial for abuse of discretion.
 
 [1]
 

 People v Haywood,
 
 209 Mich App 217, 228; 530 NW2d 497 (1995). For the reasons discussed below, we conclude that the proper standard of review is abuse of discretion.
 

 The parties’ disagreement over the standard of review can be traced to an ambiguity in the
 
 Yatooma
 
 decision. In that case, a crucial witness for the prosecution revealed that his grant of immunity was conditioned, in part, on passing a lie detector test. The trial court denied the defendant’s motion for a mistrial, and the defendant declined a cautionary instruction. The
 
 Yatooma
 
 Court made no reference to the appropriate standard of review in its decision, choosing instead to apply factors articulated in
 
 People v Whitfield,
 
 58 Mich App 585; 228 NW2d 475 (1975).
 

 However,
 
 Whitfield
 
 addressed polygraph testimony as unpreserved error, not in the context of a motion for a mistrial. After surveying case law on this particular error, the
 
 Whitfield
 
 Court distilled several principles for determining whether polygraph testimony, as unpreserved error, amounted to manifest injustice.
 
 *513
 
 Defendant implies that the
 
 Whitfield
 
 factors, as listed in
 
 Yatooma, supra,
 
 form something like a five-part test, where the trial court must apply each prong before reaching its decision. However, a careful review of
 
 Whitfield
 
 reveals that the decision merely catalogues factors that different courts have, at various times, considered important when addressing this issue. The list of factors is not mandatory, nor is it exhaustive. Rather, the factors are tools that any court, whether a court of first instance or a reviewing court, can employ to decide the issue before it. A trial court will likely consider factors from
 
 Whitfield
 
 when deciding whether to grant a motion for a mistrial. A reviewing court, on the other hand, may apply the same factors in different contexts, often depending on whether the error is preserved. In other words, we do not review de novo the trial court’s application of the
 
 Whitfield
 
 factors; rather, when reviewing the trial court’s decision for an abuse of discretion, we may consider those
 
 Whitfield
 
 factors that we find relevant.
 

 Unfortunately,
 
 Yatooma.
 
 invites confusion by applying the
 
 Whitfield
 
 factors without discussing the appropriate standard of review. One must keep in mind that the
 
 Whitfield
 
 Court distilled its factors to give guidance when reviewing unpreserved error. Of course, nothing prohibits a trial court from considering these factors when deciding whether to declare a mistrial. However, the factors are suggestive, and the
 
 Whitfield
 
 catalogue should not be considered exhaustive.
 

 In sum, the proper standard of review for a trial court’s decision to grant or deny a mistrial is abuse of discretion. In deciding whether the trial court abused its discretion, we are free to consider the factors
 
 *514
 
 listed in
 
 Whitfield,
 
 but we do not engage in review de novo.
 
 Haywood, supra.
 
 A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial.
 
 Id.
 

 B
 

 Having determined the proper standard of review, we must now decide whether the trial court abused its discretion in refusing to grant a mistrial. We conclude that it did not. Defendant correctly argues that testimony concerning the polygraph was inadmissible. However, the inadvertent, unsolicited mention by a witness that a polygraph was administered does not necessarily require a mistrial.
 
 People v Kiczenski,
 
 118 Mich App 341, 346; 324 NW2d 614 (1982). As previously noted, this Court, in
 
 Yatooma, supra
 
 at 240-241, summarized several factors that can be considered when deciding whether a trial court abused its discretion in failing to grant a mistrial when a witness has mentioned a polygraph:
 

 (1) [W]hether defendant objected and/or sought a cautionary instruction; (2) whether the reference was inadvertent; (3) whether there were repeated references; (4) whether the reference was an attempt to bolster the witness’s credibility; and (5) whether the results of the test were admitted rather than merely the fact that a test had been conducted.
 
 [Id.
 
 at 240 (citations omitted).]
 

 Upon considering these factors, we find that, the circumstances here do not indicate that the trial court abused its discretion when it denied defendant’s motion for a mistrial. Defendant did object and receive a cautionary instruction, a fact that weighs in
 
 *515
 
 favor of granting mistrial. The reference to the polygraph, however, was inadvertent. The prosécutor asked the witness if he thought he would be charged with second-degree murder, a question that required a single-word answer, “yes” or “no.” The rest of the information was volunteered and could not have been anticipated.
 

 Nor do we find that application of the remaining factors favors a finding that the trial court abused its discretion. The testimony was not repeated; it was an isolated, inadvertent comment. The prosecutor did not elicit the testimony in an effort to bolster the witness’ credibility. Finally, the witness did not testify that he had in fact taken the test. Rather, he merely testified that, at one point in time, he believed he would have to take and pass a polygraph. Any number of circumstances could have intervened to make the test unnecessary. In other words, the jurors would have to infer that the witness took and passed the test, an inference they were instructed not to make. There is a fundamental difference between instructing the jurors to disregard the witness’ claim that he passed a polygraph and instructing them not to infer from his statement that he took and passed such a test. In the first case, the jurors must pretend that they did not hear the testimony. In the second case, they can be instructed that the inference is improper.
 

 Defendant relies heavily on Yatooma,
 
 supra.
 
 In that case we found that the trial court had erred in refusing to grant a mistrial because the trial was essentially a credibility contest, and a witness’ inadvertent mention of a polygraph test unfairly tipped the balance in the prosecution’s favor. However, the
 
 Yatooma
 
 Court noted that trial involved two central
 
 *516
 
 witnesses for the prosecution, one of whom testified that he had passed a he detector test.
 
 Yatooma
 
 does not discuss what other evidence might have been admitted at the trial. Although we agree with defendant that the inadvertent mention of the polygraph came from an important witness, we disagree with defendant’s contention that this case was essentially a credibility contest between defendant and the witness. Several other witnesses testified about various events and details connecting defendant to the victim’s murder, and defendant’s own testimony was not credible in several respects. In order to believe defendant’s version of the murder, one must discount the testimony of several additional witnesses, not just the witness who mentioned the polygraph.
 
 [2]
 

 We also note that the trial court’s instruction to the jurors was exhaustive. They were instructed that polygraphs were unreliable and inadmissible and that they should not infer from what the witness said that he in fact took and passed a polygraph test. When we review these factors under the appropriate standard of review, abuse of discretion, we cannot find that the trial court abused its discretion in refusing to grant defendant’s motion for a mistrial.
 

 n
 

 Next, defendant challenges certain evidentiary rulings made by the trial court. A trial court’s decision to admit evidence is subject to review for abuse of discretion.
 
 People v McAlister,
 
 203 Mich App 495, 505; 513 NW2d 431 (1994).
 

 
 *517
 
 Defendant first argues that the trial court erred in permitting Daniel Brown to testify, over defendant’s objections, about a conversation between Daniel and Billy. Daniel is Billy’s brother, and at trial he testified that Billy called him after the victim had been killed. Billy told him that something had gone wrong, and that the victim was not coming back. When Daniel asked Billy if he was coming back, Billy told him that he did not know, but that if he did not return, Daniel should tell the police that defendant had done something with him and the victim. The conversation occurred shortly after Billy said he had watched defendant kill the victim. The trial court ruled that the testimony was admissible under MRE 803(3) to show Billy’s then existing state of mind. We agree with the trial court that the contested statements concerned events of the moment and reflected Billy’s state of mind. Specifically, the statements reflected Billy Brown’s emotions, intent, and plans. Therefore, we conclude that the trial court did not abuse its discretion in admitting the testimony.
 

 Defendant further argues that the trial court abused its discretion by permitting Fred Tripp to testify regarding remarks made to him by defendant’s brother, Tim Kehoe. Tripp testified that in the fall of 1994, Kehoe told him that he had cleaned up his grandparent’s house, the house in which the victim was killed, because defendant and Billy were incapacitated. He also told Tripp that there was blood in the bathtub. The trial court ruled that the remarks were admissible pursuant to MRE 804(b)(3), as statements against penal interest.
 

 In
 
 People v Barrera,
 
 451 Mich 261, 268; 547 NW2d 280 (1996), our Supreme Court stated that, when evai
 
 *518
 
 uating a trial court’s decision to admit or exclude a statement against penal interest offered under MRE 804(b)(3), four factors should be considered: “(1) whether the declarant was unavailable, (2) whether the statement was against penal interest, (3) whether a reasonable person in the declarant’s position would have believed the statement to be true, and (4) whether corroborating circumstances clearly indicated the trustworthiness of the statement.” Here, Tim Kehoe intended to invoke his Fifth Amendment privilege against self-incrimination, thus establishing his unavailability. Moreover, the statements in question were clearly against his penal interest because, not only was he aware of “what happened” at his grandparents’ house, but he admitted complicity in the cover-up of the murder.
 
 [3]
 
 We further find that a reasonable person in Kehoe’s position would not have made the statements unless he believed they were true. Considering all the facts and circumstances surrounding the victim’s disappearance, the fact that the remarks were made to a person whom defendant’s brother considered a friend, and that the statements were made voluntarily and spontaneously, we conclude that the statements were sufficiently trustworthy. Accordingly, we hold that the trial court did not abuse its discretion in admitting the statements pursuant to MRE 804(b)(3).
 

 m
 

 Defendant next argues that the trial court abused its discretion by permitting Detective Brooks to testify on rebuttal about how he located witness Sam
 
 *519
 
 Ayres. The prosecution intended Brooks’ testimony to contradict defendant’s claim that Ayres was Billy’s contact, by showing that Billy was unable to help them locate Ayres. By showing that Billy was unable to help police locate this witness, who corroborated Billy’s version of the killing, Brooks was able to counter defendant’s argument that Ayres was testifying as a favor to the Brown family.
 

 In
 
 People v Figgures,
 
 451 Mich 390, 399; 547 NW2d 673 (1996), our Supreme Court stated:
 

 [T]he test of whether rebuttal evidence was properly admitted is not whether the evidence could have been offered in the prosecutor’s case in chief, but, rather, whether the evidence is properly responsive to evidence introduced or a theory developed by the defendant. ... As long as evidence is responsive to material presented by the defense, it is properly classified as rebuttal, even if it overlaps evidence admitted in the prosecutor’s case in chief. [Citations omitted.]
 

 We find that Brooks’ rebuttal testimony responded to material presented by the defense. Billy Brown testified that when he and defendant went to Florida after the murder, defendant contacted Ayres to meet them at a bus station. Ayres testified that he had met defendant previously in early 1993, and even mentioned that defendant had been driving a white pickup truck. However, defendant testified that Ayres was Billy Brown’s “connection” in Florida and that Billy Brown had introduced him to Ayres. On rebuttal, Brooks addressed defendant’s contradictory testimony by explaining how they were able to locate Ayres. The testimony tended to show that Billy Brown could not help police locate Ayres, giving rise to the inference that Ayres was
 
 defendant’s
 
 contact. Brooks’
 
 *520
 
 testimony satisfied the requirements of
 
 Figgures, supra,
 
 and was proper rebuttal evidence. Thus, the court did not abuse its discretion in admitting the evidence.
 

 IV
 

 Lastly, we granted defendant leave to file a supplemental brief in which he argues that there was insufficient evidence to convict him of first-degree, premeditated murder. We disagree.
 

 When determining whether there was sufficient evidence to convict defendant of first-degree murder, we review all the evidence in a light most favorable to the prosecution and decide whether any rational trier of fact could find that the elements of the charged offense had been proved beyond a reasonable doubt.
 
 People v Wolfe,
 
 440 Mich 508, 515; 489 NW2d 748 (1992). In his brief, filed in propria persona, defendant appears to argue that premeditation had not been proved because he provided an alternative explanation for the crime; specifically, he argues that Billy killed the victim and that he, defendant, merely helped conceal the act. This argument ignores the substantial evidence introduced at trial that defendant killed the victim himself and that he did so with premeditation. Even if we disregarded Billy Brown’s testimony, other witnesses testified that defendant had confessed involvement in the killing. Further, the killing itself was brutal and heinous. As the prosecution notes in its brief, premeditation and deliberation may be inferred from the circumstances surrounding the killing.
 
 People v Jolly,
 
 442 Mich 458, 466; 502 NW2d 177 (1993). Finally, Billy Brown’s testimony suggested several opportunities for defendant to recon
 
 *521
 
 sider his actions, with perhaps the most significant opportunity being when he left the bathroom to fetch a knife, which he then used to slash the victim’s throat. Taking all the evidence in a light most favorable to the prosecution, we find that there was ample evidence to convict defendant of first-degree, premeditated murder.
 

 Affirmed.
 

 [1]
 

 The prosecution, for its part, ignores this Court’s holding in
 
 Yatooma, supra,
 
 apparently hoping that it will go away by itself.
 

 [2]
 

 One witness contradicted defendant’s testimony that defendant was at a McDonald’s restaurant when the victim was killed. Others testified that defendant was upset with the victim for damaging his truck, while still others testified that defendant admitted involvement in the killing.
 

 [3]
 

 “[T]he determination whether a ‘statement was against the declarant’s penal interest. . . [presents] ... a question of law.’ . . . Therefore, appellate review is de novo.”
 
 Barrera, supra
 
 at 268.