# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL JOSEPH OUELLETTE,

        Defendant-Appellant.

UNPUBLISHED
July 12, 2016

No. 326219
Oakland Circuit Court
LC No. 2013-248726-FH

Before: JANSEN, P.J., and FORT HOOD and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of aggravated stalking, MCL 750.411i, and two counts of unauthorized installation of a tracking device on a motor vehicle, MCL 750.539*l*. Defendant was sentenced, as a third habitual offender, MCL 769.11, to 43 months' to 10 years' imprisonment for his aggravated stalking convictions, and 365 days in jail for his unauthorized installation of a tracking device on a motor vehicle convictions. We affirm defendant's convictions, but remand to the trial court for further proceedings consistent with this opinion.

This case arises from defendant's persistent and relentless communications directed at his ex-wife, Florence Acosta, and her boyfriend, Jay Reynolds, from approximately October 2013 to December 2013. Although defendant's convictions were for his actions during that time span, defendant's communications started in July 2013 and ended in the summer months of 2014.

First, defendant argues that offense variable (OV) 10 and OV 13 were improperly scored because the relevant conduct used to score both OVs was essentially part of defendant's convictions for aggravated stalking. We disagree.

For preserved sentencing errors, "the trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). "Clear error is present when the reviewing court is left with a definite and firm conviction that an error occurred." *Id.* (citation and quotation marks omitted). However, "[w]hether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "When calculating the sentencing guidelines, a court may consider all

-1-

record evidence, including the contents of a PSIR, plea admissions, and testimony presented at a preliminary examination." *McChester*, 310 Mich App at 358.

As a preliminary matter, OVs must be scored only in reference to conduct surrounding the sentencing offense. *People v McGraw*, 484 Mich 120, 127-129; 771 NW2d 655 (2009). In other words, "[o]ffense variables are properly scored by reference only to the sentencing offense except when the language of a particular offense variable statute specifically provides otherwise." *Id.* at 135.

OV 10 involves exploitation of a vulnerable victim. MCL 777.40(1). MCL 777.40(1)(a) mandates that 15 points be assessed if "[p]redatory conduct was involved." " 'Predatory conduct' means preoffense conduct directed at a victim, or a law enforcement officer posing as a potential victim, for the primary purpose of victimization." MCL 777.40(3)(a). This Court has held that "predatory conduct under the statute is behavior that is predatory in nature, precedes the offense, [and is] directed at a person for the primary purpose of causing that person to suffer from an injurious action . . . ." *People v Kosik*, 303 Mich App 146, 159-160; 841 NW2d 906 (2013) (citation and quotation marks omitted; alteration in original). "However, predatory conduct does not encompass '*any* preoffense conduct, but rather only those forms of preoffense conduct that are commonly understood as being predatory in nature . . . as opposed to purely opportunistic criminal conduct or preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection.' " *Id.* at 160 (citation omitted).

OV 13 governs a continuing pattern of criminal behavior and requires the assessment of 25 points if "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). "For determining the appropriate points under this variable, all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a).

Both OVs were properly scored. OV 10 was properly scored because defendant initiated preoffense predatory conduct toward both victims, Acosta and Reynolds, with his e-mails and text messages, and the conduct was not mere preparation or "run-of-the-mill" planning. Defendant sent an e-mail to Acosta on July 19, 2013, after finding out that she was romantically involved with another man, directly accusing Acosta of being a fornicator and an adulterer. Moreover, defendant texted Acosta on October 21, 2013, that he would "beat the living dog F" out of Acosta's boyfriend if he tried to "charm" defendant's son. A preponderance of the evidence supports the conclusion that these messages were predatory in nature, insofar as they inflicted emotional injury upon both Acosta and Reynolds.[1] Also relevant is the fact that

---

[1] Granted, Reynolds was not the direct target of defendant's preoffense messages, as defendant was unaware at the time that Reynolds was Acosta's new boyfriend and only found out on October 31, 2013. However, when he threatened to "beat the living dog F" out of Acosta's new boyfriend, he nonetheless threatened a "victim," which brings his conduct under the ambit of OV 10. See *People v Huston*, 489 Mich 451, 463; 802 NW2d 261 (2011).

defendant sent Acosta a string of other messages containing veiled threats on October 25, 2013, October 27, 2013, October 28, 2013, and October 30, 2013. Thus, defendant's actions were sufficient to qualify as predatory conduct intended to inflict emotional injury upon both victims, considering the nature and tenor of the threats. Moreover, defendant's contention that the conduct was not preoffense fails, as defendant's two aggravated stalking convictions encapsulated defendant's conduct from October 31, 2013, to December 6, 2013, as noted in the felony information.

Additionally, OV 13 was properly scored. The prosecution's contention below with respect to OV 13 was that defendant committed a brand new offense of aggravated stalking when he "spoof called" both Acosta and Reynolds in the summer months of 2014. This theory is correct. Per MCL 750.411i, "[a]ggravated stalking consists of the crime of 'stalking,' . . . and the presence of an aggravating circumstance . . . ." *People v Threatt*, 254 Mich App 504, 505; 657 NW2d 819 (2002). "Stalking," in turn, is defined as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411i(1)(e). The relevant aggravating circumstance here, in turn, is "[a]t least 1 of the actions constituting the offense is in violation of a restraining order and the individual has received actual notice of that restraining order . . . ." MCL 750.411i(2)(a). Defendant's spoof calls to Acosta and Reynolds satisfy the elements of aggravated stalking. A preponderance of the evidence supported the finding that defendant made numerous anonymous calls to both Acosta and Reynolds. Although defendant did not speak during these calls, the clear implication was that defendant was the caller. Indeed, Acosta testified that she was aware of how spoof calls worked because defendant used spoof cards, which are used to make spoof calls, while she was married to him. These calls would objectively cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested, considering the context in which the calls were made—an almost year-long barrage of threats and apocalyptic messages aimed at Acosta and Reynolds. Moreover, evidence was presented that Acosta and Reynolds were terrorized, frightened, intimidated, threatened, harassed, or molested. Finally, defendant made these calls in direct violation of the PPOs issued to Acosta and Reynolds. Thus, defendant's spoof calls satisfy the elements of aggravated stalking for the purposes of OV 13. Moreover, defendant's contention that his spoof calls were part of a continuous chain of activity linked to the two aggravated stalking convictions, and not a separate offense, fails. As previously mentioned, the aggravated stalking convictions encapsulated defendant's activity from October 31, 2013, to December 6, 2013, and the calls were placed after this time. Moreover, the prosecution made clear at trial that the purpose of introducing evidence of defendant's spoof calls was as "other-acts evidence" pursuant to MCL 768.27b with regard to Acosta, and as res gestae evidence with regard to both Acosta and Reynolds. Accordingly, OV 13 was properly scored.

Next, defendant argues that the trial court should have granted his motion for a mistrial because of the prosecution's improper publication of inadmissible evidence. We disagree.

"[T]he proper standard of review for a trial court's decision to grant or deny a mistrial is abuse of discretion." *People v Ortiz-Kehoe*, 237 Mich App 508, 513; 603 NW2d 802 (1999). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of

reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). "A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *Ortiz-Kehoe*, 237 Mich App at 513-514.

During trial, the prosecution placed a text message from Acosta to defendant on a slide projector for the jury to read. The text message read, in relevant part:

> In one of your emails to me you admitted to a gambling addiction, buying sex from women, stealing credit card theft, etcetera. You've been in the jail and a mental hospital.

However, when the prosecutor asked Acosta to read the text message to the jury, she read from a redacted version in her hands, which provided:

> In one of your emails to me you admitted to -- you admitted to some things that I can't say but I don't preach to you about not being a good example for our son.

Before trial, the prosecution and defense agreed to redact the portion of the text message delineating defendant's vices. When defense counsel argued its motion for a mistrial based on the publication of the text message, the prosecutor conceded to the trial court that she "made the mistake of putting that on the projector . . . ." However, the prosecutor also noted that the text message was on the projector for "less than five seconds." In response to defendant's mistrial request, the trial court held the following:

> Okay. There was -- there were a number of text messages that were on the screen at that point, it wasn't just one text message of two or three sentences. And it was up for less than five seconds. I'd be surprised if any of the jurors were able to focus in and read those few words of the whole page that quickly.

> Having said that, even if they had the reference -- there was a reference to being in the mental hospital, that part has already been referenced in other emails. So I don't think that is -- that issue's relevant.

> The rest of it, the gambling addiction, the paying for sex and the use of the credit cards although potentially prejudicial to the defendant, I don't think it is so prejudicial in this case as to warrant a mistrial.

> If you want a limiting instruction I'm happy to give one. You can come up with one at the end of the trial. So I'm denying that request.

Defense counsel did not request a curative instruction, saying, "I don't believe that the limiting instruction would cure the taint in this case and, and just would object to it."

The brief publication of the unredacted text message does not warrant a mistrial, as there was no irregularity that prejudiced defendant and impaired his ability to get a fair trial. See *Ortiz-Kehoe*, 237 Mich App at 513-514. First, the record shows that the prosecutor had displayed the text message for, *at most*, a very brief period. It is highly questionable whether the

jurors even read the entirety of the text message, especially considering that a large number of text messages and e-mails were published during the four-day trial. Second, abundant independent evidence was presented essentially reiterating the contents of the text message. With respect to defendant's alleged gambling addiction, stealing, and credit card theft problems, evidence was presented that defendant admitted to taking advantage of Acosta financially. E-mails from Acosta to defendant were presented, in which Acosta accused defendant of abusing her financially. Defendant also explicitly admitted in an e-mail, which was also read into evidence, "I do know I got heavily addicted to gambling and that contributed to much of my actions such as stealing and scamming to feed my habit." Moreover, with respect to defendant's incarceration and history of mental commitment, evidence was presented that defendant was detained by the police and handcuffed on November 6, 2013, for attempting to perform an exorcism on his father, and thus, a logical extension of this fact is that defendant was incarcerated following the event. Also, an e-mail in which defendant himself admitted that he was "committed to the looney hospital" was also introduced. Additionally, with respect to defendant "buying sex from women," defendant admitted in an e-mail presented at trial that he was involved in "fornication with many women." Acosta's allegations in the inadmissible text message may have concerned other incidents, and not the incidents covered in the evidence properly admitted at trial. However, the evidence that was presented already cast defendant in a negative light with regard to similar issues, and any harm that the inadmissible text message could have caused was likely inconsequential. Accordingly, the trial court did not choose an outcome falling outside the range of reasonable and principled outcomes, and therefore, did not abuse its discretion in denying defendant's motion for mistrial. See *Unger*, 278 Mich App at 217.[2]

Finally, defendant argues that OV 4, OV 10, and OV 13 were scored based on facts not found by the trier of fact beyond a reasonable doubt or admitted by him, and therefore, his sentence is unconstitutional under *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). We agree.

To preserve this issue, a defendant must object to the error during sentencing on the same ground. *Lockridge*, 498 Mich at 392. Here, defendant did not object to the scoring of his OVs on the basis of improper judicial fact-finding, and therefore, this issue is unpreserved for appellate review. See *id*.

Unpreserved claims of error are reviewed for plain error. *Lockridge*, 498 Mich at 392-393. "To establish entitlement to relief under plain-error review, the defendant must establish that an error occurred, that the error was plain, i.e., clear or obvious, and that the plain error

---

[2] To the extent that defendant also argues that the prosecutor committed misconduct with regard to the admission of the text message, defendant's argument fails since the prosecutor's conduct did not deprive him of a fair and impartial trial, as discussed above. See *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014) (explaining that a prosecutor commits misconduct if he or she abandons the responsibility to seek justice and denies the defendant a fair and impartial trial).

affected substantial rights." *Id.* Substantial rights are affected when there is prejudice—"the error affected the outcome of the lower court proceedings." *Id.* at 393. Furthermore, even if all three requirements are satisfied, "an appellate court must exercise its discretion in deciding whether to reverse." *Id.* "Reversal is warranted only when the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings independently of the defendant's innocence." *Id.*

The Michigan Supreme Court recently held in *Lockridge*, 498 Mich at 373-374, 383, that because Michigan's formerly mandatory sentencing guidelines required increasing a defendant's mandatory minimum sentence based on facts not found by the jury beyond a reasonable doubt or admitted by the defendant, the mandatory aspect of the sentencing guidelines was unconstitutional. Accordingly, the sentencing guidelines are now advisory. *Id.* at 391-392.

Under the new framework, "cases in which (1) facts admitted by the defendant and (2) facts found by the jury were sufficient to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced" are not tainted by plain error, as there is no prejudice resulting to the defendant. *Lockridge*, 498 Mich at 394-395. Conversely, "cases in which facts admitted by a defendant or found by the jury verdict were *insufficient* to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced" involve an unconstitutional constraint that impairs a defendant's Sixth Amendment rights. *Id.* at 395. Thus, "all defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure can establish a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry." *Id.* On remand, the trial court must consider whether it "would have imposed a materially different sentence but for the constitutional error." *Id.* at 397.

OV 4, OV 10, and OV 13 were assessed based on facts not found by the trier of fact beyond a reasonable doubt or admitted by defendant. Defendant was convicted of two counts of aggravated stalking, MCL 750.411i. As mentioned above, per MCL 750.411i, "[a]ggravated stalking consists of the crime of 'stalking,' . . . and the presence of an aggravating circumstance . . . ." *Threatt*, 254 Mich App at 505. "Stalking," in turn, is defined as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411i(1)(e). The relevant aggravating circumstance here, in turn, is "[a]t least 1 of the actions constituting the offense is in violation of a restraining order and the individual has received actual notice of that restraining order . . . ." MCL 750.411i(2)(a). OV 10, which mandates assessment of 15 points if predatory conduct was involved, was scored based on judicial fact-finding, as the jury did not necessarily find beyond a reasonable doubt, and defendant did not admit himself, that preoffense victimization was involved. See MCL 777.40(1)(a). Moreover, OV 13, which mandates assessment of 25 points if the sentencing offense was part of a pattern of felonious criminal activity involving three or more crimes against a person, was scored based on judicial fact-finding as well, as the jury did not necessarily find beyond a reasonable doubt, and nor did defendant admit himself, that spoof calls were made during the summer months of 2014. See MCL 777.43(1)(c). Finally, OV 4, which mandates

assessment of 10 points if "[s]erious psychological injury requiring professional treatment occurred to a victim," was scored based on judicial fact-finding, as the jury did not necessarily find beyond a reasonable doubt, and nor did defendant admit himself, that either Acosta or Reynolds required professional psychological treatment. See MCL 777.34(1)(a). OV 4 does require assessment of points if "serious psychological injury may require professional treatment." MCL 777.34(2). However, again, the jury was not required to necessarily find that psychological injury was needed in its verdict for aggravated stalking, and nor did defendant admit this fact. Accordingly, OV 4, OV 10, and OV 13 were based on facts not found beyond a reasonable doubt by the jury or admitted by defendant.

Defendant was sentenced before July 29, 2015. In addition, the judicial fact-finding altered the sentencing guidelines range. Defendant was assessed 10 points for OV 4, 15 points for OV 10, and 25 points for OV 13. His total OV points were 50, putting him at OV-level V. See MCL 777.66. He was also assessed 25 prior record variable (PRV) points, putting him at PRV-level D. *Id.* Accordingly, his sentencing guidelines range was 14 to 43 months for a third habitual offender. See MCL 777.66; MCL 769.11. Without the assessment of points for OV 4, OV 10, and OV 13, defendant would have received zero OV points, which would have resulted in a sentencing guidelines range of 5 to 34 months. Accordingly, the facts admitted by defendant or found by the jury beyond a reasonable doubt were insufficient to assess the minimum number of OV points necessary for defendant's score to fall in the cell of the sentencing grid under which he was sentenced.

Therefore, remand is warranted in order for the trial court to determine whether it would have imposed a materially different sentence but for the constitutional error. *Lockridge*, 498 Mich at 397. The court must first " 'include an opportunity for . . . defendant to avoid resentencing by promptly notifying the [trial] judge that resentencing will not be sought.' " *Id.* at 398 (citation omitted; alteration in original). "If . . . defendant does not so notify the court, it should obtain the views of counsel, at least in writing, but need not require the presence of . . . Defendant, in reaching its decision (with or without a hearing) whether to resentence." *Id.* (citation and quotation marks omitted). The trial court must then place in the record its decision not to resentence defendant with an explanation, or must vacate the sentence and, with defendant present, resentence defendant in conformance with *Lockridge*. *Id.* In determining whether it would have imposed a materially different sentence, the court must only consider the circumstances that existed at the time of the original sentence. *Id.*

Finally, we note that the judgment of sentence incorrectly states that defendant was sentenced as a fourth habitual offender, rather than as a third habitual offender. Therefore, if the trial court decides not to resentence defendant, the judgment of sentence shall be corrected to reflect that defendant was sentenced as a third habitual offender. See MCR 6.435(A); MCR 7.216(A)(7).

We affirm defendant's convictions, but remand for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Karen M. Fort Hood
/s/ Mark T. Boonstra