*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN PATRICK ORTIZ-KEHOE,

      Petitioner-Appellant,

v

CHIPPEWA CORRECTIONAL FACILITY
WARDEN,

      Respondent-Appellee.

UNPUBLISHED
December 15, 2022

No. 361179
Chippewa Circuit Court
LC No. 22-016759-AH

Before: GLEICHER, C.J., and MARKEY and RICK, JJ.

PER CURIAM.

John Patrick Ortiz-Kehoe sought habeas corpus relief 25 years after his murder conviction, claiming that irregularities in the prosecutorial and grand jury investigations made his preliminary examination and bindover void. Ortiz-Kehoe's subsequent circuit court conviction rendered any earlier errors harmless. Moreover, Ortiz-Kehoe has failed to establish a radical jurisdictional defect warranting habeas corpus relief. We affirm the circuit court's denial of Ortiz-Kehoe's complaint.

## I. BACKGROUND

This case has a long history that has been described in more than one decision of this Court. The factual background was summarized in Ortiz-Kehoe's direct appeal from his criminal conviction, *People v Ortiz-Kehoe*, 237 Mich App 508, 510-511; 603 NW2d 802 (1999) (*Ortiz-Kehoe I*), as follows:

[Ortiz-Kehoe] was charged with the particularly heinous murder of a young woman [Rose Larner]. The victim's family reported her missing sometime in December 1993. Approximately 2 1/2 years later, Billy Brown, fearing that police were close to making an arrest in the case, confessed that he was present when [Ortiz-Kehoe] killed the victim and that he helped to conceal the body. He denied, however, that he took part in the killing. In exchange for his testimony against [Ortiz-Kehoe], he was charged as an accessory after the fact. Billy, the only eyewitness to the crime, served as the prosecution's main witness. [Ortiz-Kehoe]

-1-

testified in his own defense. The two accounts of events leading up to the killing were similar in many respects. However, [Ortiz-Kehoe] testified that he left Billy and the victim alone, and Billy killed her when she refused to have sex with him. Billy testified that [Ortiz-Kehoe] killed the victim because she was [Ortiz-Kehoe's] old girlfriend, she obsessed over [Ortiz-Kehoe] and interfered with his other relationships, and she had damaged his truck on more than one occasion. Billy further testified that [Ortiz-Kehoe] killed her while he watched. Together they disposed of the body in a process that involved mutilation, incineration, cannibalism, and burial.

The investigation into Rose Larner's disappearance took several years and was not straightforward. Initially no one knew where Larner was killed. A special grand jury was convened as described in *In re Ortiz-Kehoe*, unpublished per curiam opinion of the Court of Appeals, issued April 29, 2021 (Docket No. 351849) (*Ortiz-Kehoe II*), p 1:

> In April 1996, this Court ordered that a multicounty grand jury be convened to investigate, in part, any crimes related to Larner's disappearance. [*In the Matter of Petition for a Multicounty Citizens' Grand Jury for Eaton, Ingham, and Clinton Counties*, unpublished order of the Court of Appeals, entered April 12, 1996 (Docket No. 193808) (*Multicounty Grand Jury I*).] The grand jury was convened in Clinton County. In August 1996, [Ortiz-Kehoe] was charged with first-degree murder in connection with Larner's death.

The grand jury investigation revealed that Larner was killed in Calhoun County, not Eaton, Ingham, or Clinton County.

On April 16, 1996, the Calhoun Circuit Court issued an order appointing Ingham County Prosecutor Donald E. Martin as a special prosecutor "for the purpose of prosecuting any and all felony crimes, including but not limited to Open Murder and Accessory After the Fact, that either have been issued or may be issued in connection with the homicide of Rose Larner." (Order for Special Prosecuting Attorney, April 16, 1996.) Martin was appointed as his office had been leading the investigation into Larner's disappearance and murder from its onset.

Ortiz-Kehoe's preliminary examination was conducted in the 10th District Court in Calhoun County on September 18, 1996. After Ortiz-Kehoe was bound over for trial, this Court granted Prosecutor Martin's petition for the release of transcripts for certain witnesses who testified before the grand jury for an in camera review by the circuit court. *In the Matter of Petition for a Multicounty Citizens' Grand Jury for Eaton, Ingham, and Clinton Counties*, unpublished order of the Court of Appeals, entered December 27, 1996 (Docket No. 193808) (*Multicounty Grand Jury II*). After its review, the circuit court ordered that the parties receive copies of those transcripts. (Order, February 3, 1997.) However, this did not include transcripts of every witness who testified before the grand jury.

Ortiz-Kehoe's trial was conducted in Calhoun Circuit Court. The Calhoun County Prosecutor rather than Martin represented the people at the trial. (Warden's Circuit Court Brief in Opposition to Habeas Corpus, February 16, 2022, p 7.) A jury convicted Ortiz-Kehoe of first-degree murder and the court sentenced him to life imprisonment without the possibly of parole.

*Ortiz-Kehoe II*, p 1.  This Court affirmed and the Supreme Court denied Ortiz-Kehoe's application for leave to appeal.  *Ortiz-Kehoe I*, 237 Mich App 508, lv den 461 Mich 957 (2000).

In 2019, Ortiz-Kehoe filed a circuit court motion requesting the production of all transcripts from the grand jury investigation.  He filed a delayed application for leave to appeal the denial of his request.  This Court denied the application for lack of merit in the grounds presented.  The order, however, specifically preserved Ortiz-Kehoe's right to seek a petition for superintending control.  *People v Ortiz-Kehoe*, unpublished order of the Court of Appeals, entered November 6, 2019 (Docket No. 349963).  Ortiz-Kehoe then filed a complaint for superintending control in this Court requesting the circuit court to review "the record and testimony transcripts" from the grand jury investigation and release to him "the parts of [the] grand jury record; transcripts of testimony taken; and all indictments relating to the disappearance, coverup, and/or murder of" Larner.  (Superintending Control Complaint, December 4, 2019, Docket No. 351849.)  This Court denied the complaint because Ortiz-Kehoe had "failed to show that he filed his request for the grand-jury records within a reasonable time."  *Ortiz-Kehoe II*, p 1.

Ortiz-Kehoe then filed a complaint for a writ of habeas corpus in the Chippewa Circuit Court, the current locus of his imprisonment.  (Complaint for Writ of Habeas Corpus, January 27, 2022.)  Ortiz-Kehoe challenged the legality of appointing a special prosecutor, claimed the special prosecutor's office had a conflict of interest in this matter, and accused the special prosecutor of withholding evidence secured during the investigative subpoena and grand jury processes.  The illegal appointment of the special prosecutor invalidated the investigation and rendered the preliminary examination based on that investigation void ab initio, Ortiz-Kehoe contended.  This in turn invalidated the bindover to the circuit court and destroyed the circuit court's jurisdiction over him.  As a result of these defects, Ortiz-Kehoe contended that he had been illegally imprisoned.  (Habeas Complaint, pp 1-2.)  Ortiz-Kehoe further challenged the authority of the grand jury as it was composed of residents from Ingham, Eaton, and Clinton Counties, but the charges arose out of and were tried in Calhoun County.  (Habeas Complaint, p 27.)

The Chippewa Correctional Facility Warden noted that the investigation into Larner's disappearance began in Ingham County.  The warden conceded that "[e]ven though there was a grand jury investigation involving Ingham, Clinton and Eaton County, the charges" against Ortiz-Kehoe "were made in Calhoun County."  But "a grand jury indictment is not the only way to initiate criminal charges" and the action had to be raised and tried in the county where the murder occurred—Calhoun County.  (Warden Circuit Court Brief in Opposition to Habeas, February 22, 2022, p 6.)  The warden emphasized that Ortiz-Kehoe received a preliminary examination and subsequently was tried by the *Calhoun* County Prosecutor in Calhoun Circuit Court.  (*Id*. at 7.)  And yet Ortiz-Kehoe challenged none of these actions in his direct appeal.  (*Id*.)  That direct appeal was the correct mechanism for challenging the appointment of and investigation by the special prosecutor, as well as the grand jury proceeding.  (*Id*. at 11.)  The warden further contended that Ortiz-Kehoe's circuit court trial rendered harmless any error occurring at or before the preliminary examination and argued that "the bindover statute is a limitation on the prosecution, not the general jurisdiction of the circuit court."  (*Id*. at 12.)

Ultimately, the circuit court denied Ortiz-Kehoe's habeas corpus complaint.  The court noted as follows:

Even though there was a grand jury investigation involving Ingham, Clinton and Eaton County, the charges under which [Ortiz-]Kehoe was prosecuted came from a county not covered in the multi-county grand jury order, specifically charges were made in Calhoun County. And a grand jury indictment is not the only way to initiate criminal charges. Calhoun County was where the murder was proven to have been committed.

The question posed by [the warden] is whether a writ of habeas corpus may be used to appeal a criminal conviction. . . .

MCL 600.4310 provides:

An action for habeas corpus to inquire into the cause of detention may not be brought by or on behalf of the following persons:

* * *

(3) Persons convicted, or in execution, upon legal process, civil or criminal[.] [Opinion and Order Denying Habeas, March 31, 2022, p 2.]

The court continued that a writ of habeas corpus is designed for "radical defects which render a judgment[] or proceeding absolutely void," and not simply to correct errors. (*Id*.) It "is not a substitute for an appeal of a criminal conviction." (Opinion and Order, p 3.) To warrant habeas relief, there must be a jurisdictional defect so "radical" that it "render[s] the conviction absolutely void." (*Id*.)

In denying the writ, the circuit court reasoned:

The Circuit Court in Calhoun County is empowered to hear felony cases after a bindover. Further, the Prosecutor in Calhoun County has the duty to represent the People of the State of Michigan in criminal appeals in the proper appellate forum. Here there is no dispute that Donald Martin was not the prosecuting attorney who conducted the criminal prosecut[ion] in the Calhoun County Circuit Court after the case was bound over. Martin was appointed as a special prosecutor and had the fair color or right to act[] as a special prosecutor. Thus, following his appointment, Martin at a minimum could act as a de facto public officer, and his prosecution activity could not be collaterally attacked. . . . [Ortiz-Kehoe] had a preliminary examination, in the 10th District Court of Calhoun County, and does not assert that there was no probabl[e] cause found. Additionally, [Ortiz-Kehoe] asserts a felony information was later filed in the [Calhoun] Circuit Court.

[Ortiz-Kehoe's] remedy concerning his special prosecution claims and other claims concerning the conduct of his trial was in his direct appeal. If [Ortiz-Kehoe] had issues concerning the disqualification of Donald Martin, based on one of Martin's subordinate's spouses being formerly married to [Ortiz-Kehoe's] step-father, the time to raise and litigate that conflict has passed, and does not concern

-4-

the Calhoun County Circuit Court's power to try [Ortiz-Kehoe]. No radi[c]al defect in jurisdiction is present. [Opinion and Order, pp 3-4.]

The court continued that there is a presumption against divesting a court of jurisdiction. Moreover, errors at the preliminary hearing stage "are considered harmless once a valid conviction is obtained." Ortiz-Kehoe did not challenge the preliminary examination and bindover until more than 20 years after his conviction. The circuit court conviction was already affirmed. (Opinion and Order, p 4.)

Moreover, the court concluded, "the bindover statute is a limitation on the prosecution, not the general jurisdiction of the circuit court. A bindover must occur before an information can be filed in circuit court." (Opinion and Order, pp 4-5.) And Ortiz-Kehoe admitted that "a felony information was filed in the Circuit Court." (Opinion and Order, p 5.)

Ortiz-Kehoe then filed this appeal as of right.

## II. ANALYSIS

### A. THIS COURT'S JURISDICTION

Citing *Triplett v Deputy Warden of Jackson Prison*, 142 Mich App 774; 371 NW2d 862 (1985), the warden contends that there is no appeal as of right from the denial of a complaint for a writ of habeas corpus. (Warden Appellate Brief, p 7.) However, *Triplett* was decided based on the common law, before our court rules became effective. The only claim presented in the circuit court was for habeas corpus relief and it was denied. The order appealed by Ortiz-Kehoe is a final order under MCR 7.202(6)(a)(i) as the first order disposing of all claims and fully adjudicating the rights and liabilities of the parties in this case. Accordingly, the circuit court's order is appealable as of right under MCR 7.203(A)(1).

Nothing in the court rules excludes an order denying habeas corpus relief from being a final order appealable as of right. Notably, MCR 3.303(A)(2) allows for filing an original complaint for habeas corpus in this Court after such relief is denied by the circuit court. This is the general route taken by prisoners seeking habeas corpus relief. But again, nothing in MCR 3.303 precludes a prisoner from seeking an appeal of the circuit court's habeas corpus denial instead.

### B. HABEAS CORPUS STANDARD

MCL 600.4307 provides that "any person restrained of his liberty within this state" may bring "[a]n action for habeas corpus to inquire into the cause of detention" "except as specified in" MCL 600.4310. As described by this Court, "[t]he object of the writ of habeas corpus is to determine the legality of the restraint under which a person is held." *Moses v Dep't of Corrections*, 274 Mich App 481, 485; 736 NW2d 269 (2007) (quotation marks and citation omitted). However, MCL 600.4310(3) bars habeas corpus relief for "[p]ersons convicted, or in execution, upon legal process, civil or criminal." A person convicted of a crime may seek a writ of habeas corpus "in one narrow instance, where the convicting court was without jurisdiction to try the defendant for the crime in question." *Moses*, 274 Mich App at 485-486 (cleaned up). To qualify for habeas corpus relief a jurisdictional defect must be so "radical" that it renders "the conviction absolutely

void." *Id*. at 486. "A radical defect in jurisdiction contemplates an act or omission by state authorities that clearly contravenes an express legal requirement in existence at the time of the act or omission." *Id*. (cleaned up). But a writ of habeas corpus is not a substitute for direct appellate relief. *Id*.

## C. CIRCUIT COURT TRIAL RENDERS EARLIER ERRORS HARMLESS

The fact that Ortiz-Kehoe was jury tried and convicted in circuit court *after* the cited errors occurred earlier in the proceedings is of great import. Circuit courts are courts of "general jurisdiction" with original subject matter jurisdiction over all matters unless prohibited by law. *People v Goecke*, 457 Mich 442, 458; 579 NW2d 868 (1998).

> In personam jurisdiction is vested in the circuit court upon the filing of a return of the magistrate before whom the defendant waived preliminary examination or before whom the defendant had been examined. Having once vested int eh circuit court, personal jurisdiction is not lost even when a void or improper information is filed. [*Id*. at 458-459 (quotation marks and citations omitted).][1]

In *People v Hall*, 435 Mich 599; 460 NW2d 520 (1990), a four-justice majority of the Michigan Supreme Court held that errors in a grand jury or preliminary examination proceeding can be rendered harmless by a subsequent, valid circuit court conviction. In Michigan, a preliminary examination is a legislative, not constitutional, right. *Id*. at 603. "The Legislature, which created the preliminary examination procedure, has also mandated by statute that a conviction shall not be reversed where error is harmless[.]" *Id*., citing MCL 769.26. Indeed, under federal law "while a defendant presently detained may challenge the probable cause for his confinement, once he has been tried and convicted, there is no requirement under the federal constitution that the conviction be vacated because the defendant was detained pending trial without a determination of probable cause." *Hall*, 435 Mich at 604-605, citing *Gerstein v Pugh*, 420 US 103; 95 S Ct 854; 43 L Ed 2d 54 (1975).

Ortiz-Kehoe challenged his circuit court conviction in his direct appeal and lost. He raises no new challenges to the validity of the conviction. Accordingly, absent some deviation so severe that it destroyed the circuit court's jurisdiction from the onset, any error in the investigative, grand jury, or preliminary examination stage will be harmless.

## D. SPECIAL PROSECUTOR

Ortiz-Kehoe correctly notes that in 1996, when Martin was appointed as the special prosecutor in this case, MCL 49.160 did not permit the appointment of a special prosecutor for investigative purposes. The statute, as enacted by 1978 PA 535, provided for the appointment of

---

[1] Ortiz-Kehoe contends that the circuit court lacked jurisdiction over him because the district court failed to file "a proper return" and because an illegally appointed special prosecutor signed the information sent to the circuit court. (App Brief, pp 28-29.) However, Ortiz-Kehoe actually was bound over after a preliminary examination and a felony information was submitted to the circuit court. As stated in *Goecke*, it is irrelevant if that information was void or improper.

a special prosecutor only when a county's prosecuting attorney was "disqualified by reason of conflict of interest or [was] otherwise unable to attend to the duties of the office." Accordingly, the circuit court erred in appointing Martin for investigative purposes. See *People v Davis*, 86 Mich App 514, 520-522; 272 NW2d 707 (1978).

However, Martin did not try this case before the circuit court and Ortiz-Kehoe's valid circuit court conviction renders harmless any error in the appointment of Martin. Moreover, the improper appointment of the special prosecutor was not a radical defect in jurisdiction. As the majority held in *Davis*, 86 Mich App at 523, such an improperly appointed special prosecutor still has "a fair color of title to the office." Although this decision was issued before November 1, 1990, this Court's published decisions are precedential under MCR 7.215(C)(2) and the principles of stare decisis. See *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018). The precedential effect of a case should not be rejected "simply because it is an older case." *Id*. Martin was a prosecuting attorney in another county and still had a duty to act under the oath of his office. His appointment cannot be collaterally attacked.[2]

Martin's improper appointment and the alleged conflict of interest in Martin's office also could have been raised in Ortiz-Kehoe's direct appeal. Ortiz-Kehoe indicates that his stepfather's ex-wife was married to Martin's chief assistant prosecutor during the investigation in the 1990s, a fact known to Ortiz-Kehoe when he filed his direct appeal. As the record stands 25 years later, we cannot know what role, if any, the chief assistant prosecutor played in the investigation or whether any attenuated connection colored his decisions. More importantly, even if there was a conflict of interest, it would not form the basis of a radical jurisdictional defect demanding Ortiz-Kehoe's release. It would have disqualified the Ingham County Prosecutor from trying the case. As the Ingham County Prosecutor did not try this case in the circuit court, any error in this regard was rendered harmless.

## D. WITHHOLDING OF EVIDENCE

Ortiz-Kehoe accuses Martin of withholding evidence prior to the preliminary examination. Specifically, Ortiz-Kehoe asserts that during the investigation a Michigan State Police Officer served an investigative subpoena on Joel Torres, a childhood friend of Billy Brown. During the investigative subpoena hearings in April 1996, Torres allegedly stated that Brown confessed to murdering Larner. The prosecution never turned over the transcript of Torres's testimony. Ortiz-Kehoe also points to statements in the record suggesting that investigative subpoenas were issued to other unnamed individuals as well and complains that that information also was not produced. Ortiz-Kehoe further continues to challenge the amount of information released to the parties from the grand jury investigation, placing blame on Martin despite that it was the circuit court who determined what information could be released.

---

[2] Ortiz-Kehoe contends that *Nguyen v United States*, 539 US 69; 123 S Ct 2130; 156 L Ed 2d 64 (2003), "narrowly limited" the de facto officer doctrine upon which *Davis* was based. (App Brief, pp 38-39.) However, *Nguyen*, 539 US at 77, only questioned the applicability of this doctrine as applied to "alleged irregularities in the assignment of judges." That ruling has no impact on the continued viability of *Davis*.

Ortiz-Kehoe's challenge more accurately sounds as a failure to produce exculpatory evidence in violation of *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). Appropriate remedies for discovery violations are outlined in MCR 6.201(J), which gives the court discretion to "order the party to provide the discovery or permit the inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances." The court rule "encourage[s]" the parties "to bring questions of noncompliance before the court at the earliest opportunity." Ortiz-Kehoe did not bring his challenge in a timely fashion. If he had, the circuit court could have reviewed the issue and ordered a remedy contemplated by the court rule. Nothing in the court rule, however, divests a circuit court of jurisdiction based on a discovery violation.

## E. GRAND JURY PROCEEDINGS

Within his argument challenging the prosecutor's failure to produce grand jury records during discovery, Ortiz-Kehoe challenges the propriety of the multicounty grand jury proceedings. A party waives an issue by failing to include it in the statement of questions presented. See *Caldwell v Chapman*, 240 Mich App 124, 132; 610 NW2d 264 (2000). This Court has discretion to consider issues not properly raised by a party. See *Tingley v Kortz*, 262 Mich App 583, 588; 688 NW2d 291 (2004). As Ortiz-Kehoe could have raised this challenge in his direct appeal, we decline to exercise our discretion to consider this belated claim. We note, however, that to the extent Ortiz-Kehoe contends that he requires a full review of the grand jury records to ensure that all discoverable information was released, the circuit court conducted a contemporaneous in camera review. Records were released to the parties at that time.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Jane E. Markey
/s/ Michelle M. Rick