# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DARRELL WILDER, also known as DARRELL
JOHN WILDER, also known as DARRELL J.
WILDER,

        Defendant-Appellant.

UNPUBLISHED
September 27, 2016

No. 327491
Wayne Circuit Court
LC No. 14-004600-FH

Before: BORRELLO, P.J., and MARKEY and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of felon in possession of a firearm (felon in possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), third offense, MCL 750.227b. The jury acquitted defendant of carrying a concealed weapon, MCL 750.227. The trial court sentenced defendant to five years' probation for the felon in possession conviction and 10 years' imprisonment for the felony-firearm conviction. For the reasons set forth in this opinion, we affirm.

## I. FACTS

This case arises from an investigation of suspicious conduct at a vacant lot adjacent to 2175 Eastlawn in Detroit by Detroit Police Officers Steven Fultz and David Shaw on May 16, 2014. At about 4:20 p.m. that day, Fultz and Shaw were on routine patrol in their fully marked police vehicle. As they traveled down Eastlawn in a residential area, the officers noticed a group of individuals in a vacant lot, standing around the front of a late model, silver Monte Carlo. After closer examination, both officers observed that one of the men, later identified as defendant, appeared to have the handle of a handgun sticking out from his right front pants pocket.

Shaw, who was driving the police vehicle, turned in the direction of the vacant lot without activating the vehicle's warning lights. As the police vehicle approached the group of people, both officers watched as defendant took a key from the hand of a woman in the group and walked "casually" from his position near the driver's side door of the silver Monte Carlo to its rear. Defendant used the key to open the Monte Carlo's trunk, "pulled a handgun up from his right pants pocket," put the gun in the trunk, and closed the trunk. The officers did not observe

-1-

any other individual approach the rear of the Monte Carlo or open the trunk, and none of the individuals walked or ran away as the police vehicle approached. The officers ultimately opened the trunk and discovered a Glock semi-automatic handgun with a drum attachment and arrested defendant.

At trial, the parties stipulated that defendant had a prior felony conviction and had not been eligible to possess a firearm at the time of his arrest. After taking testimony from Fultz and Shaw, the prosecution called Charmell Richardson, who was in the parking lot near the car. Richardson testified that she owned the Monte Carlo and was selling it to Carlos Wilder that day. Richardson stated that she did not give defendant the key to her car. Further, she said she had been standing next to defendant before the officers approached and had not seen defendant or anyone else carrying a gun or opening the Monte Carlo's trunk.

Defense counsel called Carlos, defendant's brother and Richardson's cousin, who expanded on but largely confirmed Richardson's version of the May 16, 2014 events. Defense counsel also called defendant's wife, Tameachi Wilder, who had known defendant for 16 years and had lived with him for nine years. Tameachi recalled that she had been braiding defendant's hair on the afternoon of May 16, 2014, when defendant received a call from Carlos. She had not finished defendant's hair when he left with his brother, and Tameachi did not know where they were going. Tameachi had not seen defendant with a gun that day. In response to defense counsel's line of questioning, Tameachi stated that she did not know defendant to own or carry any guns. Thereafter, on cross-examination, Tameachi admitted that she knew defendant had previously been convicted at least twice of felony-firearm.

Defendant was convicted and sentenced as set forth above. This appeal ensued.

## II. ANALYSIS

On appeal, defendant first argues that the trial court erred under MRE 404(b) and MRE 609 when it allowed the prosecutor to question Tameachi about two of defendant's prior felony-firearm convictions, and when it denied defendant's subsequent motion for a mistrial on the same ground.

We review a trial court's decision to grant or deny a mistrial for an abuse of discretion. *People v Ortiz-Kehoe*, 237 Mich App 508, 512; 603 NW2d 802 (1999). We also review a trial court's decision regarding the admissibility of evidence for an abuse of discretion. *People v Dobek*, 274 Mich App 58, 84-85; 732 NW2d 546 (2007). However, "[p]reliminary questions of law, including whether a rule of evidence precludes the admission of evidence, are reviewed de novo." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). A trial court abuses its discretion when it admits evidence that is inadmissible as a matter of law. *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014).

At trial, defense counsel called Tameachi to testify that she had been with defendant at home just before the incident, and that she had not seen him with a weapon as he left the house that afternoon. Tameachi also testified that, to her knowledge, defendant did not own a gun or keep any weapons in their home. On cross-examination, the prosecutor challenged this testimony as follows:

[*The Prosecutor*]:  Now you were asked whether or not [defendant] had a weapon with him on that day?

[*Tameachi*]:  Yes.

*The Prosecutor*:  Okay.  You don't know where he went?  You didn't see where he went after he left your apartment on the eastside of Detroit, did you?

*Tameachi*:  No.

*The Prosecutor*:  Do you know of [defendant] to carry weapons?

*Tameachi*:  No.

*The Prosecutor*:  Do you know of him to carry guns?

*Tameachi*:  No.

*The Prosecutor*:  You've been with him for nine years and you don't know of him to carry guns?

At this point in the cross-examination, the prosecutor asked for a hearing outside the presence of the jury, and the trial court agreed.  Once the jury was out of the courtroom, the prosecutor requested permission to question Tameachi about two prior felony-firearm convictions, one from 2007 and one from 2010, on defendant's record.  Defense counsel objected, arguing that the crimes were not relevant and suggesting that the prosecutor was "simply trying to back-door and get in convictions that she knows she can't get in."  The trial court considered the objection but granted the prosecutor's request.

The jury was recalled and the prosecutor continued her cross-examination of Tameachi, questioning Tameachi about the two prior felony-firearm convictions.  Tameachi admitted that she was aware of defendant's two prior convictions, but maintained that she did not know defendant to carry weapons.

After Tameachi's testimony, defense counsel moved for a mistrial on grounds that "those questions that were asked were inadmissible [and] unfairly prejudicial."  Defense counsel argued that she had not opened the door for character evidence because her questions had been limited to whether defendant possessed a weapon on the day of the incident, and it had been the prosecutor who questioned Tameachi about whether she knew defendant to own a gun or regularly carry one.  The trial court denied the motion for a mistrial.

On appeal, defendant argues that the trial court erred when it allowed the prosecutor to question Tameachi about her knowledge of defendant's prior firearms convictions because it allowed the presentation as inadmissible "character evidence" under both MRE 404(b) and MRE 609.  However, defendant misapplies both court rules.

First, MRE 404(b) did not operate to limit the presentation of testimony regarding defendant's prior convictions because, despite the trial court's characterization of the testimony,

such testimony did not constitute character evidence. Evidence of defendant's prior convictions, admitted for the purpose of testing the veracity of defendant's own witness, was admissible under MRE 404(b). MRE 404(b) prohibits evidence of other crimes, wrongs, or acts of defendant only when offered "to prove the character of a person in order to show action in conformity therewith." In this case, while defendant correctly notes that evidence of his past crimes may have encouraged an inference of character or propensity, such an inference did not render the evidence inadmissible. Even evidence reflective of a defendant's character is not rendered inadmissible by MRE 404(b) when it is relevant to a noncharacter purpose. *People v Crawford*, 458 Mich 376, 385; 582 NW2d 785 (1998).

MRE 611(c) provides that "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility." Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," MRE 401, and the interest, bias, and credibility of a witness is "almost always relevant," because "the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence that might bear on accuracy and truth of a witness' testimony," *People v Layher*, 464 Mich 756, 764-765; 631 NW2d 281 (2001).

Here, the prosecutor introduced evidence of defendant's prior felonies for impeachment purposes to rebut Tameachi's testimony that defendant did not carry guns. When Tameachi testified that she did not know defendant to own a gun or to carry one, she opened herself up to questioning related to her veracity on this issue. By introducing evidence of defendant's prior convictions, the assistant prosecutor was not attempting to establish that defendant had a propensity for carrying guns or committing gun-related crimes, or that defendant's previous crimes made it more likely for him to have committed the crime for which he was on trial. Rather, the prosecutor sought to introduce the evidence to challenge the credibility of the witness relative to the assertion that defendant did not own or carry guns. Consequently, although the trial court's characterization of the evidence as "character evidence" was mistaken, its decision to allow the evidence was not error. In this case, because the evidence was relevant to witness credibility and not offered to prove defendant's bad character or his propensity to act in conformity therewith, the trial court did not err in admitting the evidence, albeit it did so for different reasons. See *In re People v Jory*, 443 Mich 403, 425; 505 NW2d 403 (1993) ("Where a trial court reaches the correct result for the wrong reason, its decision need not be reversed on appeal.")

Defendant also argues that the prosecutor improperly raised a collateral issue, presumably defendant's ownership or habit of carrying firearms, in order to admit evidence of defendant's prior felonies through the "back door" of impeachment. Defendant is correct that, in general, "a witness may not be contradicted regarding collateral, irrelevant, or immaterial matters." MRE 608(b); *People v Vasher*, 449 Mich 494, 504; 537 NW2d 168 (1995). However, the issues of defendant's prior felony-firearm convictions and Tameachi's credibility were not collateral matters. A collateral matter is defined as "[a]ny matter on which evidence could not have been introduced for a relevant purpose." *People v Steele*, 283 Mich App 472, 488; 769 NW2d 256 (2009), quoting *Black's Law Dictionary* (8th ed). Impeachment evidence is not collateral if it relates to the substantive issues in the case, "matters closely bearing on a defendant's guilt or innocence," or matters related to a witness' bias or interest. *People v LeBlanc*, 465 Mich 575,

590; 640 NW2d 246 (2002). Here, Tameachi's knowledge of her husband's history regarding gun ownership and possession was clearly relevant and closely bore on defendant's guilt or innocence.

Similarly, MRE 609's prohibition on impeachment through prior convictions is inapplicable given the factual scenario presented here. MRE 609 provides in relevant part:

> For the purpose of attacking the credibility of a witness, evidence that *the witness* has been convicted of a crime shall not be admitted unless the evidence has been elicited from the witness or established by public record during cross-examination, and
>
> > (1) the crime contained an element of dishonesty or false statement, or
> >
> > (2) the crime contained an element of theft, and
> >
> > > (A) the crime was punishable by imprisonment in excess of one year or death under the law under which the witness was convicted, and
> > >
> > > (B) the court determines that the evidence has significant probative value on the issue of credibility and, if the witness is the defendant in a criminal trial, the court further determines that the probative value of the evidence outweighs its prejudicial effect. [MRE 609(a) (emphasis added).]

In this case, the prosecution did not offer evidence of the witness Tameachi's prior convictions, but rather offered evidence of defendant's prior convictions to illustrate contradictions between Tameachi's testimony and her history with defendant. The prosecutor's intent was not to prove that Tameachi's prior convictions indicated that she was inherently untrustworthy. Rather, it was to show that Tameachi's trial testimony lacked credibility because Tameachi knew about defendant's convictions before she testified that she had never known defendant to carry a firearm. MRE 609 thus did not apply, and the fact that defendant's prior convictions did not contain an element of theft or dishonesty is irrelevant.

In sum, the trial court did not err in admitting evidence of defendant's prior convictions. Accordingly, the trial court did not abuse its discretion in denying defendant's motion for a mistrial and defendant is not entitled to relief on this issue. *Ortiz-Kehoe*, 237 Mich App 512.

Next, defendant argues that the trial judge's conduct in questioning the prosecution's witnesses[1] pierced the veil of judicial impartiality and deprived defendant of a fair trial. We

---

[1] Defendant argues that the trial judge questioned all of the witnesses, but a review of the record indicates that the trial judge only questioned the prosecution's witnesses.

review an unpreserved claim of judicial bias for plain error. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

Generally, a trial court "may interrogate witnesses, whether called by itself or a party." MRE 614(b). Recently, in *People v Stevens*, 498 Mich 162, 164; 869 NW2d 233 (2015), our Supreme Court clarified the proper scope of judicial questioning of witnesses as follows:

> This Court has stated the central object of judicial questioning should be to clarify. Therefore, it is appropriate for a judge to question witnesses to produce fuller and more exact testimony or to elicit additional relevant information. Judicial questioning, nevertheless, has boundaries . . . .
>
> * * *
>
> It is inappropriate for a judge to exhibit disbelief of a witness, intentionally or unintentionally. It is essential that the judge not permit his own views on disputed issues of fact to become apparent to the jury. [*Id*.]

The *Stevens* Court explained that "[a] judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id*. When considering the totality of the circumstances, a reviewing court should consider,

> the nature of the trial judge's conduct, the tone and demeanor of the judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions, either at the time of an inappropriate occurrence or at the end of trial. [*Id*.]

Having reviewed the record, considering the totality of the circumstances, while the trial judge asked needlessly excessive and irrelevant questions of the witnesses, the questioning as a whole did not evidence impropriety or pierce the judicial veil of impartiality. The trial judge's questions were not "intimidating, argumentative, or skeptical," *id.*, and there is nothing to suggest that the judge's conduct was otherwise inappropriate. The trial judge did not interrupt during direct or cross-examination, and waited each time for the respective parties to conclude their own questioning. The trial judge also allowed members of the jury to pose their own questions to each witness, and offered both attorneys the chance to re-examine the witnesses after she and the jury posed their questions. While the judge directed questions toward the prosecutor's witnesses, the questions themselves did not elicit answers favoring one side more than the other. Finally, the trial judge instructed the jury that "[i]f you believe that I have an opinion about how you should decide the facts you must pay no attention to that opinion." Jurors are presumed to follow their instructions, and such a curative instruction ensures a fair trial even when there is minor or brief inappropriate conduct. *Stevens*, 498 Mich at 177. Despite defendant's argument to the contrary, this is not a case where, even with a curative instruction, the trial court "so overstepped its bounds that no instruction can erase the appearance of

partiality." *Id*. at 178. Indeed, the trial judge's questions revealed no bias to correct. The veil of judicial impartiality was not pierced, and no plain error occurred. *Id*.

Next, defendant argues that he was deprived of the effective assistance of counsel when defense counsel (1) chose to call Tameachi to the stand, opening the door to the admission of damaging character evidence, and (2) failed to object to the trial court's "improper" questioning of witnesses.

Defendant failed to preserve this issue by bringing a motion for a new trial or a *Ginther*[2] hearing in the lower court. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). Our review is therefore limited to mistakes apparent on the record. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). Whether a person has been denied the effective assistance of counsel is a mixed question of law and fact. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). "A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Id*.

To establish ineffective assistance, the defendant must show that "(1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant." *People v Heft*, 299 Mich App 69, 80-81; 829 NW2d 266 (2012). In order to show deficient performance, "a defendant must show that counsel's performance was outside the wide range of professionally competent assistance." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). A defendant is prejudiced if there is a reasonable probability that, "but for defense counsel's errors, the result of the proceeding would have been different." *Heft*, 299 Mich App at 81.

Defense counsel's performance at trial did not fall below an objective standard of reasonableness. First, defense counsel's decision to call Tameachi, while resulting in the jury's exposure to information regarding defendant's prior felony-firearm convictions, also enabled defense counsel to elicit testimony confirming that defendant had not possessed a firearm when he left his home on the day of the incident. Considering the significant evidence against defendant, defense counsel's decision to call defendant's wife was not only objectively reasonable, but perhaps necessary to support defendant's only possible defense—that he had not been the one to put the handgun in the Monte Carlo's trunk. We note that: "[d]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy," *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999), and this Court does not second guess defense counsel's strategic decisions regarding what evidence to present or how to question witnesses, *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004) (internal citations and quotations omitted). Additionally, although defense counsel made the decision to call Tameachi to testify, she properly objected to the prosecutor's introduction of defendant's prior convictions. Her actions did not fall below an objective standard of reasonableness. *Strickland*, 466 US at 687.

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

With respect to the trial court's questioning of the witnesses, as previously discussed, the questioning did not amount to bias or unfair prejudice. Accordingly, defendant cannot show that counsel's failure to raise an objection amounted to the ineffective assistance of counsel. See e.g. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.") Accordingly, defendant is not entitled to relief on this issue.

Finally, defendant argues that he was deprived of a fair trial when the trial court failed to properly scrutinize the prosecutor's improper, racially discriminatory, peremptory challenges pursuant to *Batson v Kentucky*, 476 US 79, 89; 106 S Ct 1712; 90 L Ed 2d 69 (1986), before denying defendant's objection to the prosecutor's use of peremptory challenges to excuse four African American jurors.

Under *Batson*, a prosecutor is prohibited from using peremptory challenges to strike a juror from a defendant's jury on the basis of race. *People v Bell*, 473 Mich 275, 278; 702 NW2d 128, amended 474 Mich 1201 (2005). The determination of whether a prosecutor's challenge was discriminatory involves a three step process. *People v Armstrong*, 305 Mich App 230, 237-238; 851 NW2d 856 (2014). First, a defendant must establish a prima facie case of purposeful discrimination based on race. *Id*. The burden is on the defendant to "offer facts that *at least* give rise to an inference that the prosecutor had a discriminatory purpose for excluding the prospective juror." *Id*. It is only after the defendant has established a prima facie case that the prosecutor must provide a race-neutral explanation for the challenge at issue. *Id*. Finally, the trial court decides whether the defendant has proved purposeful discrimination. *Id*.

The appropriate standard of review for a *Batson*[3] challenge depends upon which part of the three-part challenge procedure is before the court on appeal:

> If the first step is at issue (whether the opponent of the challenge has satisfied his burden of demonstrating a prima facie case of discrimination), we review the trial court's underlying factual findings for clear error, and we review questions of law de novo. If *Batson*'s second step is implicated (whether the proponent of the peremptory challenge articulates a race-neutral explanation as a matter of law), we review the proffered explanation de novo. Finally, if the third step is at issue (the trial court's determinations whether the race-neutral explanation is a pretext and whether the opponent of the challenge has proved purposeful discrimination), we review the trial court's ruling for clear error. [*People v Knight*, 473 Mich 324, 345; 701 NW2d 715 (2005).]

Here, the first step of the *Batson* analysis is not at issue. When defense counsel objected to the prosecutor's use of three peremptory challenges to remove African American prospective jurors, the prosecutor noted that he had actually removed four black jurors and offered race-neutral explanations for each removal. The trial judge then proceeded to rule on the ultimate question of discrimination, presumably finding that defendant had established at least a prima

---

[3] *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986).

facie case. As is the case here, "if the proponent of the [peremptory] challenge [that removed the potential jurors at issue] offers a race-neutral explanation and the trial court rules on the ultimate question of purposeful discrimination, the first *Batson* step (whether the opponent of the [peremptory] challenge made a prima facie showing) becomes moot." *Knight*, 473 Mich at 338. Accordingly, we look to the second and third *Batson* factors: (1) whether the proponent of the peremptory challenge articulates a race-neutral explanation as a matter of law, and (2) whether the race-neutral explanation is a pretext and if the opponent of the challenge has proved purposeful discrimination. *Id.* at 345.

Jury selection took place on the first day of defendant's trial. A total of 23 jurors were selected from the jury pool. One juror was excused by the trial court for cause, defendant exercised four peremptory challenges and the prosecutor exercised five peremptory challenges. Of the prosecutor's five peremptory challenges, four were used to remove African American individuals from the pool—Jurors Anderson, Taylor, Jackson, and Lewis. After the fourth such challenge, defense counsel objected on *Batson* grounds. The trial judge requested a response from the prosecutor, who explained:

> [*The Prosecutor*]: Your Honor . . . The reasons for which I struck those individuals, number one, was because her [Juror Anderson's] son currently has a case that is being prosecuted by our office. [Juror] Taylor had a brother who had been convicted of carjacking and would not look up at me or look at the [c]ourt when answering questions. [Juror] Jackson did not inform the [c]ourt about the contact that she had with the [o]fficer-in-charge, didn't inform the [c]ourt that she was a victim to a crime and didn't inform the [c]ourt that she had contact with someone that had been arrested of a crime and [Juror] Lewis just had a lot going on.

> *The Court*: [Juror] Lewis just had a lot going on?

> *The Prosecutor*: [Juror] Lewis was the one that caught cancer in jail and had the lead case. He was a party to a lead case and he had a drug case that disappeared.

The trial judge then asked defense counsel if she had a response. Defense counsel did not raise any objection to the prosecutor's race-neutral reasons for her exercise of peremptory challenges. Instead, defense counsel shifted gears, arguing that "this jury is not representative of a jury of my client's peers," and raising a challenge to "the jury pool and the composition in this case." Defense counsel and the prosecutor then made arguments related to the propriety of using voter registration lists to build jury pools and whether it is the racial population of the city or county that must be represented by a jury pool. Neither of these issues are raised by defendant on appeal, and although the trial judge never explicitly revisited or ruled on defense counsel's *Batson* challenge, the trial judge concluded that the racial makeup of the jury was fair and defendant raised no further objections.

Here, the prosecutor properly articulated race-neutral reasons for removal in compliance with *Batson*'s second step as a matter of law. *Batson*'s second step "does not demand an explanation that is persuasive, or even plausible." *Id.* at 324. "A neutral explanation in the

context of [this Court's] analysis here means an explanation based on something other than the race of the juror . . . [and] [u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Id*. The prosecutor adequately explained each peremptory challenge, citing reasons including the potential for bias or a conflict of interest based on dealings with the prosecutor's office, body language, failure to disclose information, and unpredictability. Each of the prosecutor's articulated race-neutral reasons for exercising peremptory challenges was a "clear and reasonably specific explanation of [a] legitimate reason[] for exercising the challenges." *Batson*, 476 US at 98 n 20. There is no discriminatory intent inherent in any of the prosecutor's articulated reasons. Indeed, the prosecutor provided a plausible, and even persuasive, race-neutral argument to support each of its peremptory challenges of African American prospective jurors. *Batson*'s second step was therefore satisfied as a matter of law.

Further, each of the prosecutor's articulated reasons was clearly supported by the record. Juror Anderson, the first juror called from the jury pool, informed the trial court that she had a son that was in the Wayne County jail after a domestic violence charge brought only two weeks before defendant's trial. Juror Taylor admitted that her brother had been arrested for carjacking and gun possession eight years before defendant's trial, and that she followed along closely with that case. Juror Jackson initially stated that she had never been arrested for any offense, never been the victim of a crime, and did not have any friends or family members who had been arrested or charged with a crime. Later, the prosecutor approached the bench and the trial court asked Juror Jackson if she had ever seen the man sitting at the prosecutor's table. At that point, Juror Jackson admitted that she knew the officer-in-charge of defendant's investigation because she had recently been the victim of a crime and met him while she was reporting it. When asked why she had failed to mention the crime when specifically asked, she said she "wasn't thinking." Finally, Juror Lewis provided somewhat concerning statements during the trial court's initial voir dire. Even the trial judge exhibited some confusion over Juror Lewis' statements regarding his history with the justice system.

After obtaining a race-neutral explanation from the prosecutor, the trial court was required to "determine whether the race-neutral explanation is a pretext and whether the opponent of the challenge has proved purposeful discrimination." *Knight*, 473 Mich at 337-338. This inquiry is a factual determination to be made by the trial judge. *Id*. at 344-345. The trial court is required to assess the plausibility of the race-neutral explanation in light of all the evidence with a bearing on it. *Miller-El v Dretke*, 545 US 231, 251-252; 125 S Ct 2317; 162 L Ed 2d 196 (2005). Here, the trial court necessarily accepted the prosecutor's proffered race-neutral reasons for striking the prospective jurors although it did not clearly articulate its rationale. A fair reading of the record shows that the trial court did not err when it accepted the prosecutor's race-neutral explanations for each peremptory challenge and denied defendant's *Batson* challenge.

Defendant has not cited anything in the record that would indicate that the prosecution's race-neutral reasons were a pretext for discrimination, and there is no basis in the record to question the credibility of the prosecutor's explanations or the trial court's ruling. Defendant argues only that the prosecutor's removal of Juror Taylor on the ground that her brother had a carjacking conviction evidenced purposeful discrimination because the prosecutor did not challenge Juror Stewart, a nonblack juror, who had a nephew "in and out" of the criminal justice

system. Defendant is correct that "[i]f a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination . . . ." *Miller-El*, 545 US at 241. However, significant differences between Juror Taylor and Juror Stewart render defendant's argument unconvincing. Juror Stewart stated that he thought he had a nephew, whom he hardly knew, that could be in and out of the criminal justice system. In contrast, Juror Taylor explained that her brother had been specifically convicted of carjacking and gun possession, a crime similar to the charge defendant faced, and that she had watched her brother's case very closely during its pendency. These jurors were not so similarly situated that the removal of one without the other tended to prove purposeful discrimination. Further, the prosecutor's decision to retain Juror Stewart may have been strategic. Juror Stewart stated that he had a gun and that his brother had been the victim of a gun crime. Both of these qualities might be considered indicative of a tendency to support the prosecution during the trial on an alleged gun crime.

In sum, defendant has failed to present evidence to show that the prosecutor's race-neutral reasons for excusing African American prospective jurors were pretextual. The trial court therefore did not err in denying defendant's *Batson* challenges. Accordingly, defendant is not entitled to relief on this issue.

Affirmed.


/s/ Stephen L. Borrello
/s/ Jane E. Markey
/s/ Michael J. Riordan

-11-