*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOSHUA MICHAEL SALYERS,

        Defendant-Appellant.

UNPUBLISHED
July 9, 2019

No. 341162
Muskegon Circuit Court
LC No. 16-004697-FC

Before: BECKERING, P.J., and SERVITTO and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction for first-degree premeditated murder, MCL 750.316. He was sentenced to life in prison. We affirm.

## I. BACKGROUND

Defendant's conviction arose from the death of his girlfriend Barbara Daley. On September 4, 2016, defendant made the 9-1-1 call reporting that his girlfriend was cut and bleeding. First responders arrived to find Barbara lying on the floor in a pool of her own blood, beaten, and with multiple cuts across her neck. Barbara was found alive and died some hours later at the hospital. Medical examiner Dr. Amanda Fisher-Hubbard concluded that the cause of Barbara's death was "cutting" and "[m]ultiple injuries including blunt and sharp force." She also opined that "[t]he lack of hesitation marks, the wound that she had on her finger as well as the additional blunt force injuries that she had" made it highly unlikely that Barbara caused her own death. Defendant initially claimed that he had seen an unknown black male run out the backdoor of the home and blamed him for Barbara's assault. He later abandoned that story. Defendant also gave multiple versions as to how the cuts on Barbara's neck occurred. He eventually settled on an account where Barbara had planned to take her own life and she and the defendant wrestled with a knife resulting in further cutting, injury, and death. At trial, the jury heard that Barbara had planned to leave the defendant and had not communicated suicidal ideations to anyone. Her neighbor, Doug Carlson, testified that he approached Officer Casey Bringedahl at the scene and showed him a Facebook post transmitted six hours prior to the officer's arrival from an account with the name "Josh Salyers" that read, "one cut, two cuts, three cuts, four. What I have in my mind will ease this pain for real," and with a sub post of "you know how I

-1-

feel about her Doug Carlson." Defendant requested that the jury be instructed on involuntary manslaughter based on his testimony that Barbara's neck was cut as they struggled for the knife. The court denied the instruction. The jury subsequently found defendant guilty of first-degree premeditated murder. He appealed the verdict and during the pendency of this appeal, he unsuccessfully motioned this Court to remand his case to the trial court for an evidentiary hearing on a claim of ineffective assistance of counsel.

## II. SHACKLING

Defendant first argues that he was denied a fair trial when he was handcuffed while the jury was still in the courtroom. He also contends that the trial court abused its discretion when it denied his motion for a mistrial on the same ground. We disagree with both contentions. We review for an abuse of discretion the trial court's decision to restrain a defendant and it decision on a motion for a mistrial. *People v Dixon*, 217 Mich App 400, 404-405; 552 NW2d 663 (1996); *People v Ortiz–Kehoe*, 237 Mich App 508, 513; 603 NW2d 802 (2000). An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of reasonable and principled outcomes. *People v Babcock,* 469 Mich 247, 269; 666 NW2d 231 (2003). "A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *Ortiz–Kehoe*, 237 Mich App at 513–514.

"Freedom from shackling is an important component of a fair trial." *Dixon*, 217 Mich App at 404. Handcuffing a defendant during trial should only be done in extraordinary circumstances. *People v Jankowski*, 130 Mich App 143, 146; 342 NW2d 911 (1983). A defendant "may be shackled only on a finding supported by record evidence that this is necessary to prevent escape, injury to persons in the courtroom or to maintain order." *People v Dunn*, 446 Mich 409, 425; 521 NW2d 255 (1994). "[T]he prohibition against shackling does not extend to safety precautions taken by officers while transporting a defendant to and from the courtroom." *People v Horn*, 279 Mich App 31, 37; 755 NW2d 212 (2008).

It is undisputed that the court did not order that the defendant be shackled. Further, this defendant was not shackled in the courtroom except on this one occasion and at all other times was brought into the courtroom before the jury and exited after the jury. However, on the day in question, the defendant was shackled while the jury was still present. The court immediately made a record of the incident and the court's factual statements were undisputed by either counsel or the defendant. The court noted that on the day of the incident there was a large crowd present which began to leave the courtroom prior to the jury being excused. The court noted that the deputies were left to manage the jury, the crowd, and the defendant, and chose to control the crowd and remove the defendant in handcuffs prior to escorting the jury from the courtroom. The court found that the shackling was a mistake made by the deputies and was viewed by the jury. Defense counsel made an objection to the shackling the next day and requested a mistrial. The court found that the shackling was done to maintain order and for public safety, and that it did not prejudice the defendant. It was not an abuse of discretion, in light of the uncontroverted facts, for the court to determine that the shackling was for the purposes of public safety and for transporting the defendant out of the courtroom. Thus, this shackling was not prohibited under these circumstances. *Horn*, 279 Mich App at 37. We then turn to the issue of prejudice to the defendant. *Id*. The burden is on the defendant to establish prejudice, *Id*., however, "[i]f it is determined that the jury saw the defendant's shackles" the prosecution must "demonstrate

-2-

beyond a reasonable doubt that the shackling error did not contribute to the verdict against the defendant," *People v Davenport*, 488 Mich 1054; 794 NW2d 616 (2011). The court made a finding that the defendant was shackled while the jury was still in the courtroom and inferred that this was seen by the jurors. That finding was not contested. Therefore, the prosecution bears the burden of proving beyond a reasonable doubt that the incident did not contribute to the verdict. Defense counsel argues that the court failed to appreciate the effect of a defendant who was accused of a violent crime being handcuffed. However, as the court noted, again without objection, the defendant had almost flippantly testified that he resided in the jail at the time of trial and other witnesses also noted other jailhouse interactions. Thus, defendant's in-custody status was already known by the jury. The actual shackling of the defendant whose custodial status was known was done with the defendant's physical cooperation and without rancor. The court's finding of an absence of prejudice from the shackling was supported by the record and not the product of court error.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues by way of his attorney's brief and a Standard 4 Brief, that he received ineffective assistance of trial counsel. We disagree.

"To establish ineffective assistance of counsel, the defendant must first show: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) that there is reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *People v Toma*, 462 Mich 281, 302–303; 613 NW2d 694 (2000).

In his attorney's brief, defendant argues that trial counsel was ineffective for failing to object to Officer Bringedahl's testimony concerning the Facebook post he saw on Carlson's phone. He argues that only Carlson would have been able to authenticate the post and that Officer Bringedahl's entire conversation with Carlson was inadmissible hearsay. Both arguments are meritless.

We agree that evidence must be authenticated. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." MRE 901(a). An example of "authentication or identification conforming with the requirements of" MRE 901 is "[t]estimony that a matter is what it is claimed to be." MRE 901(b)(1). We also agree that the admissibility of hearsay is constrained. Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). "Hearsay evidence is not admissible at trial unless within an established exception." *People v Meeboer*, 439 Mich 310, 322; 484 NW2d 621 (1992); MRE 802. "A statement is not hearsay if ... [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... offered against a party and is ... the party's own statement. . . ." MRE 801(d)(1), (2)(a). However, since the defendant himself admitted making the Facebook post and receiving the subsequent response from Carlson, it is of no consequence whether Carlson authenticated the post prior to Officer Bringedahl's testimony or not. Because both Carlson and the defendant later authenticated the post, there was no prejudice to the defendant. Additionally, had an objection been made on hearsay grounds, the

-3-

prosecutor could have argued that the officer's testimony went not to the truth or meaning of the post but to providing a context for his later investigations and interrogations in this case. The statement's impact was not as the Standard 4 Brief argues, amplified because it was first heard from the mouth of an officer. The jury was instructed that it was to examine a police officer's testimony just as it would any other witness's, and "[i]t is well established that jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

Defendant also argues that trial counsel should have objected to Officer Bringedahl's testimony on grounds that the officer's conversation with Carlson was inadmissible hearsay. Defendant cannot demonstrate ineffective assistance of counsel on these grounds or that but for counsel's failure to object, the outcome of his trial would have been different, because substantially the same information was testified to later at trial by Carlson and the defendant.

Defendant raises additional claims of ineffective assistance of counsel in his Standard 4 Brief that are unpreserved for failure to raise them in a motion for a new trial or a motion for a *Ginther*[1] hearing. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). Unpreserved claims of ineffective assistance of counsel are reviewed for mistakes apparent on the record. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). "If the record does not contain sufficient detail to support defendant's ineffective assistance claim, then he has effectively waived the issue." *Id*.

Defendant first argues that trial counsel was ineffective for failing to call 14 witnesses in his defense. "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). "A defense is substantial if it might have made a difference in the outcome of the trial." *People v Hyland*, 212 Mich App 701, 710; 538 NW2d 465 (1995), vacated in part on other grds 453 Mich 902; 554 NW2d 899 (1996). Defendant presents a synopsis, or offer of proof as to what he believes each person would testify to, however without an affidavit from each of these individuals, defendant's assertion that their testimony would have been favorable is speculative.

Defendant next argues that trial counsel was ineffective for not suppressing statements defendant made to Officers Smith and Anderson, and for not moving to have the police cruiser video admitted into evidence. "Whether a statement was voluntary is determined by examining police conduct, but the determination whether it was made knowingly and intelligently depends, in part, on the defendant's capacity." *People v Tierney*, 266 Mich App 687, 707; 703 NW2d 204 (2005). At the hearing, defendant testified that he did not feel like the officers put a lot of pressure on him to provide a statement. Defendant's claim was rather one of not being able to remember. Absent any evidence of police misconduct in obtaining defendant's statement or that defendant was impaired, admission of the video would not have changed the outcome of the motion.

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Defendant also argues that trial counsel was ineffective for failing to investigate forensic evidence such as pubic hair, materials removed from the crime scene, and the fingerprints lifted from crime scene surfaces and materials. "The failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012) (quotation marks, brackets, and citation omitted). Because defendant does not dispute that only he and Barbara were present at the Jiroch address during the cutting incidents, the failure to test certain pieces of forensic evidence did not undermine confidence in the trial's outcome. Defendant also argues that there were errors in the medical examiner's report that trial counsel failed to investigate. However, he neither appended the report nor provided any explanations of the errors therein. This argument is, therefore abandoned. MCR 7.212(C)(7); *People v Kelly*, 231 Mich App 627, 640–41; 588 NW2d 480 (1998).

Defendant last argues that trial counsel was ineffective in his closing statement to the jury. Trial counsel clearly argued defendant's theory of the case, which was consistently that Barbara sustained the last cuts on her neck by wrestling with the defendant. The fact that this strategy was not successful did not render counsel ineffective. See *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001) ("That the strategy Gorosh chose ultimately failed does not constitute ineffective assistance of counsel."). Summarily, there are no apparent mistakes on the record to support defendant's ineffective assistance of counsel claims.

## IV. EVIDENTIARY ERROR

Defendant argues by way of his Standard 4 Brief, that the trial court erred when it agreed with the prosecution that comments made by others in response to his "one cut, two cut, three cut, four" Facebook post were inadmissible hearsay for which there was no exception. We disagree.

To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal. MRE 103(a)(1)." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). This issue was not preserved for appeal because defendant's objection below is not the same on appeal. In the trial court, defendant argued that the comments should be admitted out of fairness to the defendant and for context to the conversation. On appeal, defendant argues that the trial court's decision to exclude the evidence violated his constitutional right to present a defense. We review unpreserved issues for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

"Few rights are more fundamental than that of an accused to present evidence in his ... own defense." *People v Unger*, 278 Mich App 210, 249; 749 NW2d 272 (2008). That right however, is not absolute. "The right to present a complete defense may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012) (quotation marks and citation omitted). For example, an "accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *People v Hayes*, 421 Mich 271, 279; 364 NW2d 635 (1984) (quotation marks and citation omitted). "The Michigan Rules of Evidence do not infringe on a defendant's constitutional right

to present a defense unless they are arbitrary or disproportionate to the purposes they are designed to serve." *King*, 297 Mich App at 474 (quotation marks and citation omitted).

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). "Hearsay evidence is not admissible at trial unless within an established exception." *Meeboer*, 439 Mich at 322; MRE 802.

Here, the prosecutor filed a motion in limine to exclude and defendant sought to introduce a chain of comments posted on Facebook that included his "one cut" post and the comments from others in response to that post. The argument offered by the defendant was that the comments of others provided "context" for the "one cut" post by the defendant to show that others believed the post was suicidal rather than homicidal. Those comments included one from Sheronda who wrote, "don't talk like that," and a responsive post by Carlson, "quite [sic] being so self-loathing, the world will move on." What defendant describes as context is actually the truth of the matter asserted by the commentators. Defendant does not offer, nor do we find, a hearsay rule under which those statements are admissible as substantive evidence. At best, those responses could have been used to impeach the commentators. He also offered his own post in that chain which read, "goodbye I'm sorry, Jamestown story with lyrics." The court reviewed the posts and found that comments from defendant where he talked about himself were inadmissible under MRE 801(d)(2). The court's decision did not deprive defendant of the right to present a defense. Under MRE 801(d)(2), a party's own statements are admissible as an exception to the hearsay rule when they are offered against the party by a party-opponent. Here the party sought to admit the statement in his own favor. Further, defendant's rebuttal to the prosecutor's assertion that the post was an expression of homicidal intent was placed before the jury when defendant testified that the "one cut" post expressed his suicidal, not homicidal ideation.

Defendant also argues that the trial court should have admitted the excluded posts and the contents of other social media sites. Defendant has not identified either the statements or the authors of those additional statements on appeal. We therefore find defendant's Standard 4 Brief arguments abandoned for defendant's failure to brief the merits of his allegation, *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004), or waived for failure to object, *People v Carter*, 462 Mich 206, 218; 612 NW2d 144 (2000).

## V. JURY INSTRUCTIONS

Defendant argues that the trial court abused its discretion when it denied him an instruction on the lesser included offense of involuntary manslaughter when the instruction was supported by a rational view of the evidence. We agree, but find that the error was harmless.

"This Court reviews de novo claims of instructional error." *People v Martin*, 271 Mich App 280, 337; 721 NW2d 815 (2006), aff'd 482 Mich 851; 752 NW2d 457 (2008). "[A] trial court's determination whether a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Hawthorne,* 265 Mich App 47, 50; 692 NW2d 879 (2005). An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of reasonable and principled outcomes. *Babcock,* 469 Mich at 269. "Manslaughter is a

necessarily included lesser offense of murder." *People v Gillis*, 474 Mich 105, 137; 712 NW2d 419 (2006), citing *People v Mendoza*, 468 Mich 527, 544; 664 NW2d 685 (2003). "[W]hen a defendant is charged with murder, an instruction for voluntary and involuntary manslaughter must be given if supported by a rational view of the evidence." *Mendoza*, 468 Mich at 541.

Defendant proposed the jury be instructed on involuntary manslaughter under a theory of gross negligence under M Crim JI 16.10. The court denied the request holding that no rational view of the evidence would support instructing the jury on involuntary manslaughter. We hold that the court's decision was an abuse of discretion. The instruction was rationally supported by defendant's testimony that he had not intended to kill Barbara, but due to his careless and reckless actions, she died. Medical examiner Dr. Fisher-Hubbard testified that Barbara's cause of death was "cutting" and "[m]ultiple injuries including blunt and sharp force." Defendant testified that he and Barbara struggled over the knife and that his actions, while intended to interrupt and stop the suicide, actually caused further injury which led to her death. Medical examiner Dr. Fisher-Hubbard agreed with defense counsel that it was possible that the cuts across the trachea and the jugular vein could have been caused by two people pulling and shoving with a knife at the throat. Defendant further testified that during the struggle, Barbara fell multiple times on her face. Dr. Fisher-Hubbard agreed that Barbara's facial contusions, injuries to her teeth, and cut on her knee could have been the result of multiple falls or from a combination of being struck by something plus falling.

The trial court's failure to give the instruction however constituted harmless error in light of the evidence of defendant's overwhelming guilt. *Gillis*, 474 Mich at 140 n 18. Carlson testified that the night before her death, Barbara wanted to end her relationship with the defendant. Hours before her murder, defendant made a public post on social media that "one cut, two cuts, three cuts, four" would ease his pain. Defendant testified he waited until everyone left and Barbara was alone to go to the house. Sanders' security cameras and DeYoung's testimony placed defendant in the house around the time of the murder and leading up to the arrival of first responders. When officers arrived defendant had Barbara's blood all over him. Defendant initially blamed the murder on a "black male." After that identification failed, he changed his story to that of trying to prevent Barbara from committing suicide. The medical examiner testified that Barbara suffered four cuts to her throat, none of which was self-inflicted. She was also severely beaten. The jury heard defendant's version of events, and when given the choices on the jury form to find defendant guilty of first-degree or second-degree murder, it found defendant guilty of first-degree murder. Thus, even had the instruction been given, defendant's testimony would not have persuaded the jury to convict defendant of any charge lesser than first-degree murder.

## VI. REMAINING CLAIMS OF ERROR

Defendant's remaining Standard 4 Brief claims are without merit.

Defendant argues that he was denied his Sixth Amendment right to counsel when the trial court substituted his trial counsel without his approval or notice. The record contains evidence that defendant had multiple persons appear on his behalf from the Public Defender Office during these proceedings. There is no record of defendant objecting to substitution of his counsel until this appeal. We find such silence to waive any argument on appeal. *Carter*, 462 Mich 214-219.

Defendant also claims that multiple incidents of prosecutorial misconduct denied him a fair trial. Defendant made no contemporaneous objections to the prosecutor's statements, thereby failing to preserve them for appeal. *People v Thomas*, 260 Mich App 450, 453–454; 678 NW2d 631 (2004). Having reviewed defendant's claims, defendant failed to show that he was prejudiced by plain error. Therefore, reversal is not warranted on this basis. *Unger*, 278 Mich App at 235.

Affirmed.


/s/ Jane M. Beckering
/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens