*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RAYMOND PHILLIP-EUGENE CHAPPLE,

Defendant-Appellant.

UNPUBLISHED
August 15, 2024

No. 365629
Wayne Circuit Court
LC No. 21-000938-01-FC

Before: O'BRIEN, P.J., and CAVANAGH and SHAPIRO[*], JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of: (a) second-degree murder, MCL 750.317; (b) tampering with evidence, MCL 750.483a(6)(b); (c) possession of firearm by a person convicted of a felony (felon-in-possession), MCL 750.224f; and (d) two counts of carrying a firearm when committing a felony, second offense (felony-firearm), MCL 750.227b. We affirm.

## I. BACKGROUND

On March 31, 2020, Erick Grant was murdered. That evening defendant, Shanell Gray (whose children defendant fathered), and Grant were at Grant's house doing drugs and drinking. During the evening, Grant's dog came up to Gray who jokingly threatened to shoot it if it bit her. Defendant said the same thing. Grant became upset and kicked Gray and defendant out of the house. Gray took her belongings to her van and could hear defendant and Grant arguing inside. When Gray re-entered the house, she heard successive, rapid gunshots. Defendant pushed her out the side door and ordered her to drive away. Gray observed a gun in defendant's duffle bag. Grant had 36 gunshot wounds.

The next day Gray and defendant returned to Grant's house. Defendant and Tommy White, Grant's friend, entered the house from the side door and White saw Grant's body. White also saw defendant picking up shell casings near the body. White ran from the house and called the police. DNA swabs were taken at the scene but only the shell casings were submitted for forensic testing.

---

[*] Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

Defendant and Gray were arrested and interviewed by Detective Kelly Lucy and Corporal Theo Williams. Gray initially denied defendant's involvement, but later changed her statement to inculpate defendant. Defendant was convicted at a jury trial and sentenced. This appeal followed.

On appeal, defendant argues: (1) the prosecutor committed misconduct when he elicited opinion testimony from Detective Lucy suggesting that Gray's statement inculpating defendant was truthful, and defense counsel was ineffective for failing to object to this testimony; (2) defendant was denied a fair trial and the trial court erred when it denied his motion for a mistrial after Detective Lucy made an unresponsive comment about defendant's prior acts in response to the prosecutor's question; and (3) the trial court reversibly erred when it permitted the prosecution to shift the burden of proof to defendant.

## II. PROSECUTORIAL MISCONDUCT[1]

Defendant argues that the prosecutor committed misconduct by bolstering and vouching for Gray's credibility when he elicited Detective Lucy's opinion testimony regarding Gray's truthfulness. Alternatively, defense counsel was ineffective for not objecting to this question. We disagree.

### A. PRESERVATION AND STANDARDS OF REVIEW

"In cases alleging prosecutorial misconduct, issues are preserved by contemporaneous objections and requests for curative instructions." *People v Evans*, 335 Mich App 76, 88; 966 NW2d 402 (2020) (quotation marks and citation omitted). Because defendant did not contemporaneously object or request a curative instruction, his claim of prosecutorial misconduct is unpreserved. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). "Unpreserved issues are reviewed for plain error affecting substantial rights." *Id*. That is, defendant must establish that an error occurred, it was plain, and affected his substantial rights, i.e., he was prejudiced. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

A claim for ineffective assistance of counsel is preserved by moving for a new trial or for an evidentiary hearing in the trial court. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). Defendant did not move for either a new trial or an evidentiary hearing, resulting in his claim of ineffective assistance of counsel being unpreserved. Therefore, our review is for errors apparent on the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

### B. ANALYSIS

A criminal defendant has a right to a fair and impartial trial. US Const, Am VI; Const 1963, art 1, § 20. To that end, it is the prosecutor's duty to ensure defendant receives a fair trial. *People v Ullah*, 216 Mich App 669, 678; 550 NW2d 568 (1996). "Given that a prosecutor's role

---

[1] "[C]laims of inadvertent error by the prosecution are better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.'" *People v Jackson (On Reconsideration)*, 313 Mich App 409, 425 n 4; 884 NW2d 297 (2015) (quotation marks and citation omitted).

and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "Included in the list of improper prosecutorial commentary or questioning is the maxim that the prosecutor cannot vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness." *People v Meissner*, 294 Mich App 438, 456; 812 NW2d 37 (2011) (quotation marks and citation omitted).

Similarly, "it is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial." *People v Musser*, 494 Mich 337, 349; 835 NW2d 319 (2013). "[C]redibility matters are to be determined by the jury." *Dobek*, 274 Mich App at 71. "As a result, such statements are considered superfluous and are inadmissible lay witness [] opinion on the believability of a [witness's] story because the jury is in just as good a position to evaluate the [witness's] testimony." *Musser*, 494 Mich at 349 (quotation marks and citation omitted; alterations in original). However, MRE 701 permits lay witnesses to state opinions which are: "(a) rationally based on the witness's perception; and (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue." This Court has interpreted this rule to allow police officers to give opinions and inferences based on their observations and perceptions as police officers when those opinions are not based on specialized knowledge. *People v Oliver*, 170 Mich App 38, 49-50; 427 NW2d 898 (1988).

Defendant argues that the prosecutor improperly bolstered Gray's credibility by eliciting the following testimony from Detective Lucy regarding the truthfulness of Gray's later statements about defendant's culpability:

> *Q*. And when you spoke with Miss Gray did her version of events about the incident in question change at some point during your interaction with her?
>
> *A*. Yes.
>
> *Q*. Initially was she cooperative?
>
> *A*. She was speaking with us, but we didn't find her to be very truthful based on the evidence.
>
> *Q*. And at some point things changed?
>
> *A*. Yes, it did.

A portion of the video from Gray's interview was shown, including when Detective Lucy indicated "where [Gray] decides to be truthful with [the police] about the event."

Defendant argues that the prosecution "viewed Gray's second statement as the accurate version of the events." This is logical because defendant was being prosecuted for Grant's murder, and Gray's later statements to the police inculpated defendant. However, the record does not support defendant's contention that the prosecutor improperly bolstered or vouched for Gray's credibility through his questions directed to Detective Lucy. The prosecutor simply asked if Gray was initially cooperative with the police. Lucy noted that, although Gray spoke with them, they did not "find her to be very truthful based on the evidence." When the video was shown from

Gray's interview, Detective Lucy noted the portion "where she decides to be truthful with [the police] about the event." There is nothing in the prosecutor's questions to suggest he vouched "for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness." *Meissner*, 294 Mich App at 456. While "it is improper for a witness . . . to comment or provide an opinion on the credibility of another person while testifying at trial[,]" *Musser*, 494 Mich at 349, Lucy was not referring to Gray's general credibility; rather, she addressed the truthfulness of Gray's statements made to the police. Lucy gave her opinion about Gray's truthfulness during the interview as a police officer. Her opinion was based on her observation that Gray's initial statements were incongruent with the other evidence. See *Oliver*, 170 Mich App at 49-50. As a result, the challenged testimony did not involve any improper opinion of defendant's guilt. Neither did the prosecutor improperly elicit testimony regarding Gray's truthfulness. Further, defense counsel extensively cross-examined Gray about her statements, allowing the jury to determine her credibility. "Defendant has not demonstrated bad faith on the part of the prosecutor or that he was prejudiced by admission of the testimony." *People v Noble*, 238 Mich App 647, 661; 608 NW2d 123 (1999). As a result, defendant is not entitled to appellate relief. See *Dobek*, 274 Mich App at 71.

Even if Detective Lucy's statements are considered improper, the trial court extensively instructed the jury about judging a witness's credibility. Further, the trial court addressed witnesses' inconsistent statements, and instructed the jury to "consider an inconsistent statement made before the trial only to help you decide how believable the witness' testimony was when testifying here in court." The trial court also addressed testimony from police witnesses, and instructed the jury to judge it "by the same standards you use to evaluate the testimony of other witnesses[,]" belying defendant's argument that the jury was likely to give greater weight to Lucy's presumed expertise. "Jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). Defendant has failed to show prosecutorial misconduct resulting in plain error affecting his substantial rights. See *Bennett*, 290 Mich App at 475.

Next, defendant argues that defense counsel was ineffective for failing to object to Detective Lucy's statements regarding Gray's truthfulness. We disagree.

Defendant had the right to the effective assistance of counsel. *People v Isrow*, 339 Mich App 522, 531; 984 NW2d 528 (2021). "To establish a claim of ineffective assistance of counsel a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense." *People v Fyda*, 288 Mich App 446, 450; 793 NW2d 712 (2010). "A counsel's performance was deficient if it fell below an objective standard of professional reasonableness." *Id.* "The performance prejudiced the defense if it is reasonably probable that, but for counsel's error, the result of the proceeding would have been different." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Both conditions must be met to establish ineffective assistance of counsel.

Defendant argues that defense counsel should have objected when Detective Lucy testified that Gray's later statements were truthful. Defendant argues that defense counsel "could have minimized the harm by objecting, and if the answers had already been given, by asking the judge to strike the testimony and to instruct the jury to disregard it." But as discussed above, the

prosecutor did not commit misconduct in terms of his questioning about Gray's statements to Detective Lucy. And Lucy's statements about Gray's truthfulness during the police interview were not improper and did not result in an unfair trial. Even if defense counsel had objected, the objection would have been meritless and defense counsel is not ineffective for failing to advance a meritless or frivolous argument. See *People v Leffew*, 508 Mich 625, 638; 975 NW2d 896 (2022). As a result, defendant's claim of ineffective assistance of counsel fails.

### III. MOTION FOR MISTRIAL

Next, defendant argues he was a denied a fair trial when the trial court denied his motion for a mistrial after Detective Lucy's unresponsive testimony, in which she referenced his prior acts. We disagree.

### A. STANDARD OF REVIEW

This Court reviews "for an abuse of discretion the trial court's denial of a motion for a mistrial." *People v Dickinson*, 321 Mich App 1, 18; 909 NW2d 24 (2017). "An abuse of discretion occurs when the trial court chooses an outcome that is outside the range of principled outcomes." *Id*.

### B. ANALYSIS

"Use of other acts as evidence of character is generally excluded to avoid the danger of conviction based on a defendant's history of misconduct." *People v Johnigan*, 265 Mich App 463, 465; 696 NW2d 724 (2005). MRE 404(b)(1) states: "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Under this rule, "the prosecution may not present evidence of a defendant's other crimes, wrongs, or acts in order to show a defendant's propensity to commit a crime." *People v Railer*, 288 Mich App 213, 219; 792 NW2d 776 (2010).

The following exchange between the prosecutor and Detective Lucy prompted defendant's argument on appeal:

> *The Prosecutor:* And, Detective Lucy, are there certain portions of the audio in this video that are redacted, too?
>
> *Lucy:* I don't believe so, not that video, unless it was something about prior acts.
>
> *The Prosecutor:* Your Honor, could we approach real [sic] quick?
>
> *The Trial Court:* Yes.

Detective Lucy and the jury were removed from the courtroom for a sidebar to occur.

As an initial matter, Detective Lucy's reference to "prior acts" was unresponsive. An unresponsive answer is a "volunteered answer to a proper question . . . ." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995). Because Lucy volunteered the phrase "prior acts,"

and it was not directly elicited by the prosecutor, her statement is unresponsive. As this Court has held, "unresponsive answers may work a certain amount of mischief with the jury, but they are generally not considered prejudicial errors unless egregious or not amenable to a curative instruction." *Mahone*, 294 Mich App at 213. Neither exception applies in this matter.

In response to Detective Lucy's statement, the prosecutor requested a sidebar during which he stated:

> *The Prosecutor*: Your Honor, I agree that that comment should not have been made. I do—I guess I'm trying to think through what the appropriate remedy should be and whether that should be stricken and whether there should be some sort of limiting instruction to the jury.
>
> I think in some sense as the Court indicated during our sidebar off the record that the phrase prior acts, you know, it's kind of a term of art to lawyers. I don't know that it has any significance to lay people and would necessarily imply prior criminal acts and so I guess I wonder whether an instruction would call more attention to the comment than needs to be called to it, but I will leave it to the Court's discretion.

The prosecutor's observation that the term "prior acts" is a legal term of art is correct. Detective Lucy did not specify what she meant by "prior acts," and defendant assumes the jury inferred she meant prior *criminal* acts. But the jury does not always make such inferences, particularly when the term used is a legal term of art. For example, in *People v Schaefer*, 473 Mich 418, 443; 703 NW2d 774 (2005), our Supreme Court considered whether the trial court's causation instruction was flawed because the trial court did not instruct the jury on the *statutory meaning* of the word "cause." *Id*. at 441. Our Supreme Court held that the word "is a legal term of art normally not within the common understanding of jurors, and thus, simply reading the statute to the jury was insufficient." *Id*. In other words, jurors understood the common meaning of the word "cause" but the common meaning is not congruent with the more specific legal meaning. This reasoning can be applied to other legal terms of art, like "prior acts," which is also "normally not within the common understanding of jurors . . . ." *Id*. Stated differently, Detective Lucy merely saying "prior acts" without further elaboration, did not necessarily trigger in the minds of the jurors evidence of defendant's prior crimes or wrongs prohibited by MRE 404(b)(1), because the phrase is a legal term of art, just like word "cause." On this basis, it is unlikely Detective Lucy's statement prejudiced defendant.

Out of an abundance of caution, the trial court instructed the jury that "the last response given by Detective Lucy will be and is stricken from the record. I ask that you disregard her last statement." This made Lucy's reference to "prior acts" "amenable to a curative instruction." *Mahone*, 294 Mich App 213. "Jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors." *Id*. at 212. As a result, even if Lucy's unresponsive statement was prejudicial, the taint was cured by the trial court's instruction to the jury to disregard it.

Defendant argues that the trial court erred because it denied his motion for a mistrial, which was predicated on Detective Lucy's statement. We disagree.

-6-

"A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *People v Ortiz-Kehoe*, 237 Mich App 508, 513-514; 603 NW2d 802 (1999). In *People v Waclawski*, 286 Mich App 634, 709-710; 780 NW2d 321 (2009) (citation omitted; alteration in original), this Court held: "[N]ot every instance of mention before a jury of some inappropriate subject matter warrants a mistrial. Specifically, an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial."

In *People v Beesley*, 337 Mich App 50, 54-60; 972 NW2d 294 (2021), this Court considered the trial court's denial of the defendant's motion for mistrial after the prosecutor elicited statements from a police witness regarding the defendant's criminal history. When asked what steps police took before executing a search warrant on the defendant's home, the testifying detective stated "we had a briefing with the [SWAT] team which we went over the circumstances of the case and some of [defendant's] criminal history." *Id.* at 53 (alterations in original). The trial court gave a limiting instruction. *Id.* at 59. This Court concluded that the limiting instruction was "sufficient to cure the prejudicial effect of the detective's testimony." *Id.*

The facts in this matter are similar, but less egregious than the above example. Detective Lucy is a police officer who gave an unresponsive statement referring potentially to defendant's "prior acts." Unlike in *Beesley*, Lucy did not specifically refer to defendant's prior *criminal* acts, raising doubt about whether the jury made such an inference from a legal term of art, as discussed above. But even if the jury understood "prior acts" to mean prior criminal acts, the trial court's limiting instruction was sufficient to cure any prejudicial effect. The prosecutor took affirmative steps to correct any error by stopping Lucy's testimony and requesting a sidebar. This, combined with a limiting instruction removed any taint left by Lucy's reference to defendant's potential "prior acts." Further, the parties stipulated on the record before the jury that defendant was previously convicted of a felony and as of April 1, 2020, had not met the requirements for regaining eligibility to possess or use a firearm. As a result, Detective Lucy's volunteered testimony did not constitute error impairing defendant's ability to receive a fair trial, *Beesley*, 337 Mich App at 60, and the trial court did not err when it denied his motion for a mistrial. *Ortiz-Kehoe*, 237 Mich App at 513-514.

## IV. BURDEN OF PROOF

Lastly, defendant argues that the prosecutor shifted the burden of proof when he asked the officer-in-charge, Jennifer Carlson, whether defense counsel asked her to have the additional evidence tested for DNA. We disagree.

## A. STANDARD OF REVIEW

This claim of prosecutorial misconduct is preserved because defendant objected to the challenged questioning at trial; therefore, we review the issue de novo to determine whether defendant was denied a fair and impartial trial. *Bennett*, 290 Mich App at 475.

## B. ANALYSIS

"The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment [to the United States Constitution]. The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *People v Banks*, 249 Mich App 247, 258; 642 NW2d 351 (2002) (quotation marks and citation omitted); see also US Const, Am XIV. "The presumption of innocence is a doctrine that allocates the burden of proof in criminal trials . . . ." *Bell v Wolfish*, 441 US 520, 533; 99 S Ct 1861; 60 L Ed 2d 447 (1979). This allocation demands "[t]he prosecution bears the burden of proving every element of a charged offense beyond a reasonable doubt." *People v Denson*, 500 Mich 385, 401; 902 NW2d 306 (2017). "[A] prosecutor may not comment on the defendant's failure to present evidence because it is an attempt to shift the burden of proof." *Fyda*, 288 Mich App at 464. However, "[i]t is not error to comment on the failure of the defense to produce evidence on a phase of the defense upon which the defendant seeks to rely." *People v McGhee*, 268 Mich App 600, 634; 709 NW2d 595 (2005) (quotation marks and citations omitted). "Moreover, attacking the credibility of a theory advanced by a defendant does not shift the burden of proof." *Id.* at 635.

Here, DNA swabs from the crime scene were sent to the Michigan State Police Crime Laboratory. Samples from a cigarette butt, two plastic cups, two beer bottles, Grant's nail clippings and blood sample, and shell casings recovered from the scene. Only Grant's blood sample and the swabs from the shell casings were analyzed. When asked why the other items were not submitted for testing, Carlson replied:

> [Michigan State Police] MSP lab has rules about, number one, how many items you can send to the lab and then also the MSP lab will only take a casing and test for DNA if that's the only evidence that you have. So you can't—I can't do [sic] down there with other items and say, here's this and a casing. They won't take the casing.
>
> That's their hard fast rule. So I have to—so if the casing is my best evidence to a case to where I'm going to try to get DNA that—that's what I have to send. I have to kinda [sic] choose. So if I'm looking at a murder and a bullet comes out of a casing and that's what I'm looking at as my best evidence to be linked, I'm going to choose that, but also knowing that they have limitations with it.

During cross-examination, defense counsel asked Carlson if she made any effort to submit anything other than the casing for testing. Carson replied: "No, sir." When asked if that was her decision, Carson confirmed it was.

Defendant argues that the prosecution shifted the burden of proof during the following exchange which occurred during redirect examination by the prosecutor:

> *The Prosecutor:* In your experience with Sex Crimes did you ever receive a request from like a prosecutor to test certain evidence?
>
> *Carlson:* Actually Homicide I received a request from a prosecutor—another homicide case I received a request.

> *The Prosecutor:*  Do you ever receive requests from the defense to request to test certain evidence?
>
> *Carlson:*  Yes, sir.
>
> *The Prosecutor:*  And had you received that request in this case would you have accommodated it?
>
> *Carlson:*  I sure would.
>
> *The Prosecutor:*  Did you receive any request?
>
> *Carlson:* No, sir.

Defendant objected and the prosecutor replied:

> Your Honor, the People's position is the question and the idea that the defense has the right to request for certain evidence to be tested, but did not in this case, has absolutely nothing to do with the burden of proof.
>
> The case law is quite clear that the People don't have the burden to get any type of investigation done and neither does the defense, but I believe that since the implication is being offered that this swab wasn't tested and that, therefore, there's this huge gap in the investigation that could of [sic] exonerated the Defendant, I think that's the implication, that this testimony is being offered to rebut that by showing that, you know, there was certainly an availability for that evidence to be tested by anyone who asked.

Defendant now argues that the trial court erred when it overruled his objection.

During closing argument, defense counsel confirmed the prosecution's assertion regarding defendant's theory that the investigation was insufficient when he stated:

> [E]ven if you didn't test the DNA on the doors or anything, to just determine who possibly else might have been there and it's because they made their decision.  [The police] made their decision in terms of who they were going to blame this on and that was it without doing any additional investigation, without doing anything that relates to some of the things that we already picked up [for DNA testing], we just aren't going to [test the additional evidence].

In *People v Callon*, 256 Mich App 312, 330; 662 NW2d 501 (2003), the defendant raised a similar burden-shifting argument.  The prosecutor indicated "blood in the possession of the police was available to defendant for purposes of independent testing. . . ."  *Id*.  This Court held that the prosecutor's comment was appropriate because she "attacked the credibility of a theory defendant advanced at trial that there was a mistake made in the custody or testing of the blood seized by the police."  *Id*. at 331.  The same reasoning applies in this matter.  Part of defense counsel's strategy was to question the thoroughness of the police investigation.  To that end, defense counsel cross-

examined Carlson and explored her role in not submitting all the evidence for forensic testing. Defense counsel returned to this point during closing argument, emphasizing to the jury that police had already decided defendant's guilt, and as a result, did not conduct a thorough investigation. Importantly, the prosecutor's questioning of Carlson regarding defense counsel's ability to independently test the additional evidence came on redirect, after defense counsel asked her on cross-examination about the extent of her effort to conduct such testing. The prosecution's questions are a rebuttal regarding the availability of independent testing. See *id*. Stated differently, the prosecutor's question was responsive to defense counsel's theory, rather than an impermissible attempt to shift the burden of proof by suggesting defendant needed to prove his own innocence. See *id*.

Even if the prosecutor's question was improper, the trial court instructed the jury regarding the presumption of innocence and the burden of proof. Further, the trial court instructed the jury that attorneys' statements were not evidence, and their "questions to the witnesses . . . are also not evidence." As a result, the trial court's instructions purged any prejudice arising from the prosecutor's question. See *Mahone*, 294 Mich App at 212. Accordingly, this issue is without merit.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Mark J. Cavanagh
/s/ Douglas B. Shapiro